[629 NYS2d 382]

RACHMANI CORPORATION, Formerly Known as JAY Y. RACHMANI REAL ESTATE, INC., Appellant, v 9 EAST 96TH STREET APARTMENT CORPORATION, Respondent, et al., Defendants.

First Department, May 16, 1995

### APPEARANCES OF COUNSEL

*Robert Kraus* of counsel *(Rosen & Livingston,* attorneys), for respondent.

*Gerald M. Levine* of counsel *(Calotta Levine Samuel & Schreiber,* attorneys), for appellant.

### OPINION OF THE COURT

RUBIN, J. P.

This controversy arises out of the conversion of premises known as 9 East 96th Street to a cooperative housing corporation. The sponsor, Borchard Affiliations, Inc., entered into a contract for sale of the premises to the proposed cooperative

corporation, 9 East 96th Street Owners, Inc. (Owners), on April 1, 1980. An offering plan was filed with the New York State Attorney-General's office on August 11, 1980 by the sponsor. The plan identified The Rachmani Corporation as the exclusive selling agent for units owned by the cooperative housing corporation. Rachmani was engaged pursuant to an exclusive sales agreement dated July 18, 1979 which, for some reason, was never signed. The agreement provides that Rachmani is the sole agent with the exclusive right to sell or offer to sell; that Rachmani's appointment is to continue "until title to the [premises] is transferred to [Owners]" unless terminated earlier pursuant to the terms of the agreement; and that the broker's compensation "shall be due, earned and payable only 'when, as and if' the Total Cash Payment is received by the Apartment Corporation, *but in no event sooner than the Closing Date"* (emphasis added).

For the next year and a half, Rachmani engaged in intense negotiations with a tenants' committee, eventually obtaining subscription agreements from more than 35% of the eligible tenants. By letter dated February 17, 1982, the sponsor announced that the requisite number of tenants had subscribed to purchase the shares allocated to their apartments and that its offering plan was declared effective. Litigation immediately ensued, transfer of title to the cooperative corporation was enjoined, and the matter remained unresolved into 1983.

At this juncture, the course of events took a somewhat unusual turn. In May or June 1983, the sponsor sold the premises, along with its interest in the offering plan, to a new sponsor known as 9 East 96th Street Associates (Associates) for $4,675,000. It is not disputed that the former sponsor, Borchard Affiliations, Inc., never told Rachmani about this sale. On August 7, 1983, Associates filed an amendment to Borchard's original offering plan, which named Associates as the exclusive selling agent, deleting all references to Rachmani. A new cooperative corporation, designated 9 East 96th Street Apartment Corporation, was substituted in place of Owners to take title to the premises at closing. All of the tenants who had previously executed subscription agreements with Owners, plus two additional tenants, executed new subscription agreements with the new sponsor, Associates. On August 17, 1983, the new offering plan was declared effective by Associates, and title to the premises was ultimately transferred by Associates to the new cooperative corporation, defen-

dant 9 East 96th Street Apartment Corporation, on October 4, 1983.

When Rachmani's attorney appeared at the closing to demand the commissions due under the terms of its exclusive right to sell agreement with the original sponsor, he was summarily ejected. Rachmani never received any commission for the subscription agreements it negotiated with the tenants' committee and, on September 26, 1989, it commenced the instant action, alleging breach of contract, unjust enrichment and fraud. Notably, Rachmani seeks to hold defendant liable for the obligation incurred by Owners under the exclusive right to sell agreement, arguing that the formation of the new sponsor served no legitimate purpose.

In May 1992, Supreme Court dismissed plaintiff's claims for fraud and unjust enrichment. In the orders subject to appeal, entered in October and November 1993, the court granted reargument of defendant's motion to dismiss or, in the alternative, for summary judgment. Upon reargument, the court dismissed the breach of contract claim as untimely (CPLR 213 [2]), relying on the Court of Appeals decision in *Ely-Cruikshank Co. v Bank of Montreal* (81 NY2d 399 [decided June 10, 1993]). Because that determination is distinguishable from the matter on appeal in several significant respects, we reverse and reinstate the cause of action for breach of contract.

■ At issue is the timeliness of plaintiff's action and, by implication, the date that the cause of action accrued (CPLR 203 [a]). Plaintiff argues, quite logically, that Rachmani's contract with the original sponsor, Owners, was breached on October 4, 1983, the date of closing when, pursuant to the exclusive sales agreement, payment of sales commissions became due. Defendant 9 East 96th Street Apartment Corporation, however, contends that the contract was unequivocally breached when the new sponsor, Associates, amended the offering plan in August 1983 to delete all references to Rachmani as sales agent. It is evident that defendant confuses the concept of breach with the related concept of repudiation, and some elementary review is therefore in order.

It is well-settled law that a contract is not breached until the time set for performance has expired. This posed a problem when a plaintiff, who was under contract to begin work on June 1, was informed on May 11 by the party obligated to employ him that his services would not be required or accepted. The would-be employee immediately commenced suit

and was met by the defense that the action was premature because the date of commencement of the employment obligation had not yet arrived. In this seminal case, the court ruled that the party aggrieved may either await the appointed date of performance or sue immediately, at his option, reasoning that one who wrongfully renounces an obligation in contract should not be heard to complain that he has immediately been sued by the injured party *(Hochster v De la Tour,* 2 E & B 678, 118 Eng Rep 922 [QB 1853]).

The doctrine of anticipatory breach is expressed by one authority as follows: "Where there has been an anticipatory breach of a contract by one party, the other party may treat the entire contract as broken and may sue immediately for the breach" (22 NY Jur 2d, Contracts, §§ 387-393, at 295). It warrants emphasis that resort to the doctrine is generally at the plaintiff's option *(Sven Salen AB v Pierot & Sons,* 559 F Supp 503, 506, *affd* 738 F2d 419 [2d Cir], citing 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 213.10).

The theory underlying the doctrine of anticipatory breach of contract received extensive discussion by the Court of Appeals in the case of *Ga Nun v Palmer* (202 NY 483 [1911]). The authority cited in that case leaves no doubt that the date from which the breach of a contract is measured is the date performance is required to be tendered according to its terms *(supra,* at 492-493). The Court held that, even where unequivocal notice of a party's intent to renounce a contractual obligation is given *(supra,* at 488), the injured party may elect to keep the contract in force and await the designated time for performance before bringing suit *(supra,* at 493). In the event that the plaintiff's action is predicated on the renunciation of the obligation, the Court noted that he must accept it as an anticipatory breach and " 'consider the contract at an end' " *(supra,* at 492, quoting *Foss-Schneider Brewing Co. v Bullock,* 59 F 83, 87 [6th Cir 1893]). In this event, the date the statutory period of limitation commences to run is logically the date of the act that constitutes repudiation, viz., the date the contract is terminated *(see, Ely-Cruikshank Co. v Bank of Montreal, supra,* at 403).

The principle of anticipatory breach of contract is supported by sound policy considerations. Once a party has indicated an unequivocal intent to forego performance of his obligations under a contract, there is little to be gained by requiring a party who will be injured to await the actual breach before commencing suit, with the attendant risk of faded memories

and unavailable witnesses. However, it is clear that there must be a definite and final communication of the intention to forego performance before the anticipated breach may be the subject of legal action *(McCloskey & Co. v Minweld Steel Co.,* 220 F2d 101 [3d Cir]; *Ga Nun v Palmer, supra,* at 488). Mere expression of difficulty in tendering the required performance, for example, is not tantamount to a renunciation of the contract *(supra).*

With this background in mind, it is appropriate to examine *Ely-Cruikshank Co. v Bank of Montreal (supra),* upon which defendant relies. In that case, a brokerage agreement provided that it could be terminated by either party, on notice, thereupon limiting any right to commission to pending negotiations for a *lease.* The defendant bank exercised its unilateral right to terminate the agreement effective November 30, 1983 and later *sold* the subject premises. The plaintiff broker did not commence suit until January 26, 1990.

From the foregoing discussion, it should be apparent that Ely-Cruikshank's action could not be considered timely: once a contract comes to an end, either by operation of its terms or by declaration of an anticipatory breach as a result of its repudiation, the Statute of Limitations begins to run. Even if it is presumed that the contract was terminated in bad faith, Ely-Cruikshank did not contest the propriety of the bank's termination of the agreement and, thus, the six-year Statute of Limitations began to run no later than November 30, 1983, the effective date of termination *(supra,* at 403).

The holding in *Ely-Cruikshank* turns on the express terms of the contract in that case, which limited the broker's right to seek commissions to lease negotiations pending when the contract was terminated, but afforded no commensurate right to pursue commissions for pending negotiations leading to the sale of the premises *(supra,* at 402-403). As the premises were sold, plaintiff had no basis for recovery under the contract. Furthermore, even assuming that the bank terminated the contract in bad faith, the Statute of Limitations began to run on the date of termination, at the latest, and an action commenced more than six years thereafter was untimely *(supra).*

In the matter on appeal, defendant does not contend that the exclusive sales agreement was ever terminated according to its terms. In marked contrast to the facts of *Ely-Cruik-shank,* there was no attempt to comply with the termination

provisions set forth in paragraph 10 of the agreement. There was no notice to plaintiff that the obligation to pay any commission due to it at the time of closing would not be honored; nor was there any act that would render payment of this obligation impossible so as to constitute a repudiation of the agreement.

The deficiency in the reasoning employed by defendant is apparent. Defendant measures the date of breach from the filing of the amendment to the offering plan on August 7, 1983. What defendant does not explain is why this action should be considered a breach of the exclusive sales agreement entered into by Owners and plaintiff. Clearly, if plaintiff's counsel had appeared at the closing and received commission payments due plaintiff for the units sold, there would be no breach of the agreement and no grounds for this action. It should be noted that an exclusive right to sell agreement entitles the broker to receive a commission on a sale to any purchaser, whether or not the broker played a part in the negotiations *(Hammond, Kennedy & Co. v Servinational, Inc.,* 48 AD2d 394, 397), and the terms of the exclusive sales agreement in this matter are entirely consistent with this construction *(cf., Solid Waste Inst. v Sanitary Disposal,* 120 AD2d 915, 916-917). Thus, until it is clear that the seller will not honor this obligation, no breach—anticipatory or otherwise—can be said to have occurred. Even if it were to be assumed, as defendant suggests, that the filing of the amended plan constitutes a repudiation of the contract, plaintiff may nevertheless wait until closing, the time set for performance in the agreement, before regarding it as breached. In point of fact, plaintiff may have been required to await closing to declare a breach since defendant's only obligation was to pay a sum of money on or after a date certain *(see, Long Is. R. R. Co. v Northville Indus. Corp.,* 41 NY2d 455, 466 [doctrine inapplicable without continuing mutuality of obligation]; *Kelly v Security Mut. Life Ins. Co.,* 186 NY 16, 19 [doctrine inapplicable to contracts for the payment of money only]).

In a real estate transaction, involving numerous collateral agreements and requiring many different acts to be performed by the respective parties to effectuate the closing of title, there is good reason to measure breach from the law day *(1776 Assocs. Corp. v Broadway W. 57th St. Assocs.,* 181 AD2d 601, 603-604 [dissenting mem by Rubin, J.], citing *Lawrence v Miller,* 86 NY 131, 137], *appeal dismissed* 80 NY2d 824; *see also, Gargano v Rubin,* 200 AD2d 554). In this matter in

particular, not only was performance due on the closing date, but the obligation to pay plaintiff a commission did not even arise until that time. Under the terms of the exclusive sales agreement, actual payment for the shares allocated to a cooperative unit is a condition precedent to plaintiff's right to receive a commission for its sale. Plaintiff could hardly declare defendant in default of the terms of the agreement without being able to demonstrate that this condition had been fulfilled by defendant's actual receipt of payment from the purchaser *(Gargano v Rubin, supra,* at 555, citing *Laba v Carey,* 29 NY2d 302).

▪ It is of no moment that the exclusive sales agreement between plaintiff and Owners was never signed. In dismissing so much of the complaint as stated causes of action for fraud and unjust enrichment, Supreme Court explicitly found that the relationship of the parties is governed by an express agreement *(see, Knobel v Manuche,* 146 AD2d 528, 530), and this ruling is law of the case. A licensed real estate broker is not subject to the Statute of Frauds (General Obligations Law § 5-701 [a] [10]), and there can be no dispute that plaintiff's claim for commissions does not depend on a signed instrument.

Defendant, however, maintains that no payment is due to plaintiff because of the failure of a condition precedent to the obligation to pay commissions. It relies upon paragraph 8 (b) of the agreement, dealing with compensation, which provides that the duty to pay commissions to plaintiff is extinguished if, for any reason, title to the premises is not transferred to Owners. It argues that, since title was transferred to defendant 9 East 96th Street Apartment Corporation and not Owners, no payment is due.

It is well settled that "conditions in contracts for compensation of brokers have been enforced in accordance with the letter of the promise to pay" *(Mascioni v I. B. Miller, Inc.,* 261 NY 1, 5). However, it is equally settled that "a party may not frustrate the performance of an agreement by bringing about the failure of a condition precedent" *(Creighton v Milbauer,* 191 AD2d 162, 165, citing *Lindenbaum v Royco Prop. Corp.,* 165 AD2d 254, 260). The party seeking to enforce a contractual obligation generally bears the burden of proof with respect to a condition precedent. " 'The party burdened by the duty, however, usually has the burden of proving the discharge of his duty by the occurrence of a condition subsequent' " *(Lindenbaum v Royco Prop. Corp., supra,* at 258,

quoting Calamari and Perillo, Contracts § 140, at 228). The burden to establish that its duty to pay commissions to plaintiff was extinguished by the transfer of the premises to another sponsor rests upon defendant.

It would appear that the provision of the exclusive sales agreement relied upon by defendant does no more than subject the broker's entitlement to commissions to the condition that it will sell a sufficient percentage of the cooperative units to enable the plan to be declared effective. Prior to July 20, 1982, 35% of the tenants under an eviction plan were required to subscribe to purchase the shares allocated to their units in order for the Attorney-General to declare the plan effective (former Administrative Code of City of NY § YY51-6.0 [c] [9] [a], now General Business Law § 352-eeee [2] [d] [i] [added L 1982, ch 555, § 2]; *Matter of Badem Bldgs. v Abrams,* 70 NY2d 45, 49-50, n 1). Another provision of the exclusive sales agreement dealing with compensation, paragraph 8 (c), essentially limits the broker's compensation to a $10,000 nonrefundable fee in the event the plan is abandoned or withdrawn. In any event, where the occurrence of the condition is largely or, as here, exclusively within the control of one of the parties, it is said that "the express language of the condition gives rise to the implied language of promise" *(Stendig, Inc. v Thom Rock Realty Co.,* 163 AD2d 46, 48; Calamari and Perillo, Contracts § 144, at 233-234; 5 Williston, Contracts § 665 [3d ed]). Having conditioned the payment of plaintiff's brokerage commission on the transfer of the premises to Owners, the sponsor "implicitly promised to use his good-faith best efforts to bring about this result" *(supra,* at 48; *Wood v Duff-Gordon,* 222 NY 88; *Scientific Mgt. Inst. v Mirrer,* 27 AD2d 845; *Kelsey v Distler,* 141 App Div 78). The condition does not necessarily form the basis for an independent promise supporting recovery of damages for its breach *(Merritt Hill Vineyards v Windy Hgts. Vineyard,* 61 NY2d 106, 113; *see also, Lindenbaum v Royco Prop. Corp., supra,* at 259-260). However, the failure of the condition may not be set up as a defense to the underlying obligation under the contract where the party charged with the duty to fulfill the condition has failed to make a good-faith effort to bring it about. A fortiori, failure of the condition cannot be utilized as a defense where, as here, the party resisting the contractual obligation has affirmatively acted to obviate its fulfillment *(Gulf Oil Corp. v American La. Pipe Line Co.,* 282 F2d 401, 404 [6th Cir]).

Defendant's brief is devoid of any explanation for the trans-

fer of the premises to another sponsor or for the acquisition of Owners' interest in the cooperative conversion plan by Associates. Plaintiff's charge that the transfer was without legitimate purpose and made to evade the obligation to pay plaintiff the commissions it had earned therefore remains unrebutted. Also, while asserting its independent status from Owners, defendant 9 East 96th Street Apartment Corporation fails to explain why it should not be held liable to plaintiff as a "successor" to Owners under the terms of the exclusive sales agreement. Associates, defendant's ultimate sponsor, performed exactly the same role anticipated to be performed by Owners. As conceded in defendant's brief, Associates "became the owner of the Premises and sponsor of the cooperative conversion thereof."

Defendant has not presented a cognizable defense to this action based upon any argument advanced in its briefs, whether predicated upon the Statute of Frauds, the failure to state a cause of action against it or the failure of a condition precedent.

Accordingly, the order of the Supreme Court, New York County (William J. Davis, J.), entered October 29, 1993, as amended by an order entered November 19, 1993, which granted defendant's motion to renew and reargue the denial of its prior motion to dismiss plaintiff's claim for breach of contract, and which, upon renewal, granted defendant's motion on Statute of Limitations grounds and dismissed plaintiff's complaint, should be reversed, on the law, with costs, and so much of the complaint as states a cause of action for breach of contract reinstated.

Ross, NARDELLI, WILLIAMS and TOM, JJ., concur.

Order, Supreme Court, New York County, entered October 29, 1993, as amended by order entered November 19, 1993, reversed, on the law, with costs, and so much of the complaint as states a cause of action for breach of contract reinstated.