■ Trade & Industry Corporation (USA), Inc., Appellant-Respondent, v Euro Brokers Investment Corporation et al., Respondents-Appellants. [635 NYS2d 227] —Order of the Supreme Court, New York County (Herman Cahn, J.), entered January 19, 1995, which denied those portions of defendants' respective CPLR 3211 motions to dismiss the complaint with respect to the first, second, third and fourth causes of action alleged in plaintiff's complaint for breach of contract and tortious interference with contractual relations, and granted the mo-

tion and the cross-motion, in part, to the extent of dismissing plaintiff's fifth and seventh causes of action for tortious interference with prospective business relationships, plaintiff's eighth cause of action for punitive damages, and plaintiff's demand for consequential damages for anticipated profits lost, unanimously modified, on the law, to the extent of granting defendants' motions to dismiss the complaint for failure to state a cause of action and dismissing the complaint in its entirety and, except as so modified, affirmed, without costs.

In this action, plaintiff seeks to recover damages because defendants' investment banker failed to make it an offer it would not refuse. While conceding that no financing agreement was ever concluded with the financial institution, defendant GE Capital Corporate Finance Group and its parent General Electric Capital Corporation (collectively, GE), in regard to the proposed leveraged buyout of Euro Brokers Investment Corporation, plaintiff Trade & Industry Corporation (Trade) predicates its right to recovery upon the breach of certain preliminary agreements. Because only specified portions of these instruments are binding upon the parties, the anomalous position asserted by plaintiff is that defendants should be held answerable in damages for GE's failure to provide financing in accordance with several documents, all of which recite that they do not obligate any party to consummate the proposed transaction.

Plaintiff's claims for breach of contract against GE are founded upon its alleged breach of provisions contained in a confidentiality agreement dated October 6, 1992 and a letter of interest dated November 2, 1992. Plaintiff's action against the other defendants, who comprise a management group owning 80% of the shares in Euro Brokers Investment Corporation (collectively, the Euro defendants), is based upon breach of a standstill agreement contained in a letter of intent between plaintiff and these parties dated November 4, 1992. Plaintiff alleges that GE and the Euro defendants held discussions culminating in GE's insistence, shortly before the proposed closing date of the transaction, that it have a greater ownership in the corporation and control of the board of directors, among other demands.

Plaintiff alleges breach of paragraph (g) of the October 6 confidentiality agreement, which provides, "GE Capital will not take steps to initiate a transaction related to the Group [Eurobrokers, Inc.] with the seller or with another buyer resulting from the Confidential Information received unless the Company [Trade] releases GE Capital from this agreement."

What plaintiff omits to mention is that the letter agreement begins with the recitation that GE is interested in "entering into discussions" concerning plaintiff's acquisition of the Euro defendants. It continues, "In order that [GE] and the parties mentioned above may have free and open discussions, as well as unimpeded evaluation of this opportunity, it is necessary to reach an understanding now as to how any information supplied to the other by either [GE], on the one hand, or [plaintiff] on the other shall be treated." Plaintiff further alleges breach of the standstill agreement of the November 4 letter of intent, which provides, insofar as relevant: "Euro hereby covenants and agrees that until December 15, 1992 * * * neither Euro nor the management group * * * nor any of your affiliates, agents, counsel or investment bankers, will, directly or indirectly, engage in any discussions, negotiations or agreements with any person other than [Trade] the purpose or the result of which would be the sale, transfer, or disposition of Euro or any of its assets or business, provided that you may advise the parties with whom negotiations have been conducted and whose names are provided on Exhibit 6 that Euro may wish to open negotiations with them should our transaction fail." Exhibit 6 lists some nine entities in addition to plaintiff with whom the Euro defendants had previously discussed the sale of the corporation.

In construing these provisions, plaintiff does not discuss why the first should be construed to inhibit "free and open discussions, as well as unimpeded evaluation of this opportunity" between GE and the Euro defendants. Nor does it explain why, in the event GE declined to extend financing upon the terms under consideration, the second provision should be read to bar discussion of an alternative financing plan with a party to the transaction, even though it clearly contemplates initiation of negotiations with entities that are not parties to the proposed transaction under these circumstances.

To accept plaintiff's construction of these provisions is to preclude GE from deviating from the terms of the financing proposed in its November 2 letter of interest, despite express language to the contrary: "This letter is not, and is not to be construed as, a commitment, offer, agreement-in-principle or agreement ('Commitment') by GE Capital to provide financing." The letter goes on to state that the effectiveness of any such commitment "would be conditioned upon the prior execution and delivery of final legal documentation acceptable to all parties."

With respect to the Euro defendants, plaintiff similarly

argues that "the Euro defendants could not rightfully conspire and agree with GE Capital to materially change the deal to Trade's detriment, or make it impossible for Trade to secure alternative financing and submit a satisfactory commitment letter, and thereby complete the Euro transaction as originally proposed in the time frame originally agreed to by the parties." Significantly, the letter of intent recites that it "is not intended to be a binding agreement" and section 11 thereof states that "each party hereto reserves the right at any time prior to the execution of a definitive purchase agreement to refuse to enter into such an agreement should such party determine not to proceed with the transaction."

Plaintiff nevertheless seeks to hold defendants to the terms of the proposed transaction on the theory that they "breached their implied obligation of good faith and fair dealing." In support of this theory, plaintiff relies on *Goodstein Constr. Corp. v City of New York* (111 AD2d 49, *affd* 67 NY2d 990), a case which likewise involved a motion to dismiss the pleadings. The contract in *Goodstein*, which was "unusually detailed and clearly enforceable", exclusively designated Goodstein Construction Corporation to negotiate the terms and conditions of the development of certain sites (111 AD2d, *supra,* at 50). After the plaintiff had succeeded in obtaining agreement for the disposition of the property, the City concluded that the land should be set aside for sale to companies in the securities industry to enable them to construct back office space and so obviate the threat of relocation (111 AD2d, *supra,* at 53 [dissenting mem]). The City thereupon "dedesignated" the plaintiff as the exclusive developer of the site.

The dispute in *Goodstein* was analyzed by this Court from the perspective of the City's breach of an implied obligation to "complete necessary legal requirements, including Board of Estimate approval" (111 AD2d, *supra,* at 50), and it was affirmed on the basis that the "[p]laintiff did not assume the risk of bad faith by defendant" in failing to cooperate with the plaintiff in obtaining approval of the land disposition agreement (67 NY2d, *supra,* at 992). Therefore, neither the provision that the plaintiff had undertaken the planning at its own risk and expense nor provisions that the City could terminate the contract for various reasons was deemed to be sufficient to defeat the plaintiff's right to bring the action although, on a subsequent appeal, damages were confined to recovery of out-of-pocket expenditures (*Goodstein Constr. Corp. v City of New York,* 80 NY2d 366).

What requires emphasis is that the plaintiff in *Goodstein*

derived no benefit from its contract with the City unless it developed the subject property. Development was rendered impossible, however, by the City's decision to make alternative use of the site. At a minimum, this decision may be regarded as the frustration of the venture. As one authority states the rule, "Where the object of one of the parties is the basis upon which both parties contract, the duties of performance are constructively conditioned upon the attainment of that object" (Calamari and Perillo, Contracts § 195, at 312). However, while frustration discharges the duty of performance, it is not clear that relief necessarily extends to restitution for benefits conferred (*ibid.*).

The City's change of the designated use of the land in *Goodstein* may also be regarded as occasioning the failure of a condition precedent to the plaintiff's performance under the contract. This Court recently observed that "the failure of the condition may not be set up as a defense to the underlying obligation under the contract where the party charged with the duty to fulfill the condition has failed to make a good-faith effort to bring it about. A fortiori, failure of the condition cannot be utilized as a defense where, as here, the party resisting the contractual obligation has affirmatively acted to obviate its fulfillment" (*Rachmani Corp. v 9 E. 96th St. Apt. Corp.*, 211 AD2d 262, 270, citing *Gulf Oil Corp. v American La. Pipe Line Co.*, 282 F2d 401, 404 [6th Cir]).

What distinguishes the instant matter from both *Goodstein* (*supra*) and *Rachmani* (*supra*) is that the asserted obligation to conclude the leveraged buyout upon the terms tentatively proposed is inconsistent with the express reservation of the right, by both GE and the Euro defendants, to decline to consummate the transaction. As noted in *Murphy v American Home Prods. Corp.* (58 NY2d 293, 304), "the implied obligation is in aid and furtherance of other terms of the agreement of the parties. No obligation can be implied, however, which would be inconsistent with other terms of the contractual relationship." Furthermore, as stated in *Lindenbaum v Royco Prop. Corp.* (165 AD2d 254, 259), "the express language of condition may give rise to the implied language of promise (*Stendig, Inc. v Thom Rock Realty Co.*, 163 AD2d 46). The principle finds application in cases where the event contemplated by the condition is largely within the control of the party alleged to be bound by the implied promise (Calamari and Perillo, Contracts § 144). This presumes, however, that the party is obligated under the contract in which the condition implicitly giving rise to the promise is contained."

In the matter under review, unlike *Goodstein*, defendants are not obligated under the subject agreements either to procure the contemplated financing or to complete the proposed transaction. The result urged by plaintiff would elevate mere negotiation to the status of contractual obligation, despite obvious indications that the parties did not intend to be bound and failed to achieve a meeting of the minds. Merely because plaintiff has not been extended the offer of financing that it sought does not subvert the general principle that the offeror is master of his offer (Calamari and Perillo, Contracts § 30, at 45, citing *International Filter Co. v Conroe Gin, Ice & Light Co.*, 277 SW 631 [Tex Commn App 1925]). The power of the offeree is to accept upon the terms extended and, thus, bind the offeror. It is elementary contract law that a purported acceptance which materially deviates from the terms of an offer operates as a rejection and effects a termination of the offer (*New Hampshire Ins. Co. v Wellesley Capital Partners*, 200 AD2d 143, 148, and cases cited therein). Therefore, plaintiff has failed to assert any basis for recovery against defendants under the preliminary agreements among the parties. Concur— Rosenberger, J. P., Rubin, Kupferman, Asch and Mazzarelli, JJ.