■ DAVID P. KAPLAN et al., Respondents-Appellants, v MADISON PARK GROUP OWNERS, LLC, et al., Defendants, and DAVID LIPMAN, Appellant-Respondent. [942 NYS2d 522]—

Order, Supreme Court, New York County (James A. Yates, J.), entered January 12, 2011, which, to the extent appealed from, denied plaintiffs' motion for partial summary judgment on their cause of action for a declaratory judgment and for dismissal of

defendant David Lipman's counterclaims for a declaratory judgment and breach of contract, and denied Lipman's cross motion for partial summary judgment on his counterclaim for a declaratory judgment and for dismissal of plaintiffs' causes of action for breach of contract, rescission of the parties' agreements, unjust enrichment, and ancillary damages, unanimously modified, on the law, to the extent of granting plaintiffs' motion and declaring that they are entitled to the return of their contract deposit in the sum of $622,500, plus interest, and otherwise affirmed, without costs.

Defendant David Lipman is the contract vendee of two condominium units that were being sold by defendant Madison Park Group Owner, LLC (MPGO). By written agreement dated October 30, 2008, Lipman assigned his rights under the twin November 2007 purchase agreements to plaintiffs. Pursuant to the assignment, plaintiffs agreed to be bound by and assume Lipman's obligations under the purchase agreements including the obligation to close on the purchase of the premises and pay the purchase price. As required by the agreements, plaintiffs deposited $622,500 with an escrow agent. By letter dated June 19, 2009, the sponsor duly advised plaintiffs of a July 27, 2009 closing date. Plaintiffs, however, did not appear for the closing. Paragraph 13 of each purchase agreement defined "[p]urchaser's failure to close title on the date, hour and place specified by the Sponsor pursuant to Section 5 hereof" as a default. Paragraph 13 also provided that "[s]ponsor shall notify purchaser in writing of such default and advise Purchaser that he has thirty (30) days after Sponsor gives written notice to the Purchaser to cure such default." Paragraph 13 further gave the sponsor the right to retain the purchaser's deposit as liquidated damages if the default was not timely cured. Similarly, the assignment agreement gave Lipman the right to keep plaintiffs' deposit as liquidated damages in the event of the seller's failure to close title because of plaintiffs' uncured default. By letter dated July 29, 2009, plaintiffs also advised MPGO of their decision to purportedly terminate the agreement and requested a return of their deposit. The import of this letter is determinative.

On or about March 12, 2010, the Department of Law accepted for filing the 17th amendment to the condominium's offering plan. Pursuant to that amendment, the sponsor offered all purchasers under executed purchase agreements the right to rescind their agreements and obtain refunds of their contract deposits. This measure was taken because of the disclosure of a foreclosure action that had been brought against the sponsor. Invoking a provision of the assignment agreement, plaintiffs, on

March 22, 2010, notified Lipman of their decision to rescind the purchase agreements pursuant to the 17th amendment and demanded that he instruct the escrow agent to refund their deposit.

Plaintiffs moved for summary judgment on their sixth cause of action for a judgment declaring that they are entitled to a return of their deposit plus a dismissal of Lipman's counterclaims. Lipman cross-moved for summary judgment on his first counterclaim for a declaration that he is entitled to keep plaintiffs' deposit as liquidated damages. Both motions were denied.

Lipman correctly asserts that there was no lawful excuse or legitimate basis for plaintiffs' failure to attend the July 27, 2009 closing. Plaintiffs therefore defaulted under the purchase agreements and the assignment agreement. However, plaintiffs contended, and the motion court correctly found, that Lipman's contractual right to retain the deposit was never triggered because neither Lipman nor the sponsor sent plaintiffs the default notices required by paragraph 13 of each purchase agreement. The next question is whether plaintiffs' July 29, 2009 letter gave rise to an anticipatory breach of the purchase agreements.

The motion court found that plaintiffs repudiated the agreements by issuing the July 29, 2009 letter but also found issues of fact as to whether certain alleged design changes in the common elements of the premises relieved plaintiffs of their obligation to close on the law date. That issue is irrelevant because the July 29, 2009 letter was not a repudiation of the agreements. The letter added nothing to plaintiffs' July 27 default and merely confirmed the default, if it did anything at all.

By definition an anticipatory breach cannot be committed by a party already in material breach of an executory contract. It is well settled that an anticipatory breach of a contract is one that occurs before performance by the breaching party is due. For example, in *Norcon Power Partners v Niagara Mohawk Power Corp.* (92 NY2d 458 [1998]) the Court of Appeals defined an anticipatory repudiation as one that occurs "prior to the time designated for performance" (*id.* at 462-463). Consistently, in *American List Corp. v U.S. News & World Report* (75 NY2d 38 [1989]) the Court defined an anticipatory breach in terms of "a wrongful repudiation of the contract by one party before the time for performance" (*id.* at 44). Applying New York law, the United States Court of Appeals for the Second Circuit held that "[a]nticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares his inten-

tion not to fulfill a contractual duty" (*Lucente v International Bus. Machs. Corp.*, 310 F3d 243, 258 [2d Cir 2002] [citations omitted]). The rationale behind the doctrine of anticipatory breach is that it gives the nonrepudiating party an opportunity to treat a repudiation as an anticipatory breach without having to futilely tender performance or wait for the other party's time for performance to arrive (*see Cooper v Bosse*, 85 AD2d 616, 618 [1981]). As noted above, plaintiffs were in default as of July 27, 2009, two days before the letter was sent. Once plaintiffs defaulted on July 27, Lipman did not have to tender performance or wait for a law date because he could have resorted to the contractual remedies for plaintiffs' breach set forth under paragraph 13. Accordingly, the July 29, 2009 letter did not give rise to an anticipatory repudiation because it was not issued "prior to the time designated for performance" within the meaning of *Norcon* and the other cases cited above. Concur—Friedman, J.P., DeGrasse, Freedman and Abdus-Salaam, JJ.