Audthan LLC v Nick & Duke, LLC (2022 NY Slip Op 06880)

Audthan LLC v Nick & Duke, LLC

2022 NY Slip Op 06880

Decided on December 06, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 06, 2022

Before: Gische, J.P., Kern, Gesmer, Rodriguez, Pitt-Burke, JJ. 

Index No. 652050/15 Appeal No. 16391 Case No. 2022-01117 

[*1]Audthan LLC, Plaintiff-Appellant-Respondent,
v
Nick & Duke, LLC, Defendant-Respondent-Appellant.

Katsky Korins LLP, New York (Elan R. Dobbs of counsel), for appellant-respondent.
Rosenberg & Estis, P.C., New York (Jake W. Bedor of counsel), for respondent-appellant.

Order, Supreme Court, New York County (Sabrina B. Kraus, J.), entered on or about February 16, 2022, which granted in part and denied in part the motion of defendant landlord to dismiss the third amended complaint, affirmed, without costs.
Plaintiff tenant cannot seek separate redress on a theory of repudiation for the breach of contract cause of action in the third amended complaint. The plaintiff's theory of repudiation is based on the landlord's unequivocal statement in a June 4, 2021 letter to the New York City Department of Housing Preservation and Development (HPD) that it would never enter into "any" agreement to cure HPD's 2009 harassment finding against it. When the letter is read in its entirety, however, the landlord's position is that it cannot agree to any cure agreement because of plaintiff's ongoing harassment of remaining residential tenants, which resulted in four new rent-stabilized tenancies being created in 2015. These tenancies, according to the landlord, affect whether HPD will accept any cure because of their impact on the required set-aside of square footage for low income housing in the contemplated new development. In its original complaint plaintiff sought breach of contract damages for the landlord's refusal to sign a 2015 proposed HPD cure agreement (PCA) and thereafter plaintiff moved to compel the landlord to sign the PCA. In its June 1, 2017 order the court denied plaintiff's motion because there were issues of fact regarding whether it was commercially reasonable for the landlord to withhold its consent to the PCA, based upon the four new rent-stabilized tenancies.
In its June 4, 2021 letter to HPD, the landlord reiterated the same reasons for refusing to sign the PCA, once again stating that the PCA did not take into account evidence of plaintiff's ongoing harassment of tenants and the rent-stabilized tenancies newly created after plaintiff submitted its application to cure the 2009 harassment finding. The letter made reference to the "ongoing litigation" on these issues, presumably this action. Because the landlord's refusal to sign the PCA in 2021 was for the same reason it refused to sign the PCA in 2015, the June 4, 2021 statement that it would absolutely refuse to sign "any" cure agreement is merely an extension of the same breach alleged in 2015. If the landlord is found not to have breached the lease in 2015, then its actions in 2021 do not constitute a separate breach of the lease, much less a repudiation. Moreover, because a party cannot repudiate a contract it has already breached, if the landlord is found to have breached the lease in 2015, there can be no repudiation in 2021 (see Kaplan v Madison Park Group Owners, LLC, 94 AD3d 616, 618 [1st Dept 2012], lv dismissed 19 NY3d 1012 [2012], lv denied 20 NY3d 858 [2013]; Rachmani Corp. v 9 E. 96th St. Apt. Corp., 211 AD2d 262, 266 [1st Dept 1995]).
Contrary to the landlord's contention otherwise, § 33.09 of the lease does not operate to foreclose the [*2]tenant from seeking monetary damages for the landlord's refusal to enter into a cure agreement with HPD. Although § 33.09 states that the tenant's remedy is limited to injunctive relief, the third amended complaint adequately alleges bad faith conduct that, if established, could overcome § 33.09's limitation on damages (see Kalisch-Jarcho, Inc. v City of New York, 58 NY2d 377, 384-385 [1983]).
The tenant sufficiently stated a cause of action for breach of the covenant of quiet enjoyment based on the landlord's alleged refusal to execute an agreement with HPD, at which point the tenant was denied the beneficial use of the premises and was obliged to vacate. The tenant did not waive its right to vacate and surrender the premises merely because it did not do so until July 30, 2021, as the record supports an inference that the conditions increased so as to become intolerable only after the landlord's June 4, 2021 letter stating that it would "never" enter into "any" agreement with HPD that would allow the tenant to develop the property (see NY Jur 2d Landlord and Tenant § 316). The cause of action for breach of the covenant of quiet enjoyment is also sufficiently supported by the tenant's allegation that the landlord issued serial termination notices, which required the tenant to seek four Yellowstone injunctions over the course of seven years of litigation.
Likewise, the tenant sufficiently stated a cause of action for the return of its security deposit. A landlord who violates General Obligations Law § 7-103(1) "cannot use the security as an offset against unpaid rents . . . [and] forfeits any right it had to avail itself of the security deposit for any purpose, including to offset debts owed by tenant due to tenant's breach of a lease" (Jimenez v Henderson, 144 AD3d 469, 470 [1st Dept 2016] [internal quotation marks omitted]). The landlord's arguments to the contrary are belied by the motion court's August 29, 2018 order finding that the landlord violated its fiduciary obligations with respect to the tenant's security deposit.
Given the controversy between the parties over to whom the undertakings posted in connection with the Yellowstone injunctions in the action should be released, the fifth cause of action sufficiently alleges a cause of action under CPLR 6315 for release of the undertakings in the tenant's favor.
The tenant has no basis to seek attorneys' fees as damages for the notices of termination that the landlord allegedly served in bad faith, since no agreement, court rule, or statute allows recovery of attorneys' fees in this circumstance (see Baker v Health Mgt. Sys., 98 NY2d 80, 88 [2002]). Although the tenant asserts that the landlord's frivolous conduct in issuing its serial termination notices warrants imposition of fees under 22 NYCRR 130-1.1(a), the tenant also acknowledges that it has not moved for such relief before the motion court. Thus, although attorneys' fees cannot be sought as damages, the tenant is free to seek [*3]sanctions upon an appropriate motion before the motion court under 22 NYCRR 130-1.1(d).
We have considered the parties' remaining contentions and find them unavailing.
All concur except Gesmer, J. and Rodriguez, J. who dissent
in part in a memorandum by Rodriguez, J. as follows:

RODRIGUEZ, J. (dissenting in part)
 

I respectfully dissent from that portion of the majority's decision affirming the Supreme Court's dismissal of plaintiff tenant's claim for breach of contract premised on the theory of repudiation.
A party "cannot simultaneously pursue a breach of contract claim and an anticipatory breach claim premised on the same underlying conduct" (Mr. Olympia, LLC v Ultimate Nutrition, Inc., 2018 WL 1322201, *4, 2018 US Dist LEXIS 41000, *9-10 [SD NY, March 13, 2018, No. 17-CV-1346 (ALC)]; see Parlux Fragrances, LLC v S. Carter Enters., LLC, 204 AD3d 72, 90 [1st Dept 2022], citing Glen Banks, New York Contract Law § 17:19 at 1048-1051 [2d ed 28 West's NY Prac Series 2017]). However, where an obligation is ongoing or serial in nature, a subsequent material breach can support a claim on a theory of repudiation notwithstanding earlier claims for partial breach (see ESPN, Inc. v Office of Commr. of Baseball, 76 F Supp 2d 383, 387-388 [SD NY 1999]; see also Awards.com v Kinko's, Inc., 42 AD3d 178, 188-189 [1st Dept 2007], lv dismissed 9 NY3d 1025 [2008]; Livingston v Klaw, 137 App Div 639, 640 [1st Dept 1910]).
Here, section 14.01 of the lease required, among other things, that the landlord not unreasonably withhold its approval of applications and agreements related to curing the existing violations inhibiting the property's development. As Supreme Court recognized—albeit in the context of the tenant's claim for breach of the covenant of quiet enjoyment—the tenant plausibly alleges that the landlord's unequivocal statement in its June 4, 2021 letter that it "will not, and will never, approve any version of a" cure agreement was the point at which the tenant was denied the benefits of the lease. Stated differently, this unequivocal statement in the 2021 letter was different in kind from the earlier alleged conduct, and the tenant indeed alleges that the 2021 statement was a separate material breach of the obligations under section 14.01.
In addition, the tenant affirmatively procured several Yellowstone injunctions throughout this action, starting from the filing of its initial complaint in 2015 through 2020. Accordingly, the tenant clearly elected, upon the earlier alleged breaches, to "keep the contract in force, declare the default[s] only [] partial breach[es], and recover th[e] damages caused by th[ose] partial breach[es]" (13 Richard A. Lord, Williston on Contracts § 39:32 [4th ed 2021]). Under these circumstances, the tenant was permitted to treat any subsequent material breach as a repudiation of the contract.
Moreover, the cases cited by the majority, Kaplan v Madison Park Group Owners, LLC (94 AD3d 616 [1st Dept 2012], lv dismissed [*4]19 NY3d 1012 [2012], lv denied 20 NY3d 858 [2013]) and Rachmani Corp. v 9 E. 96th St. Apt. Corp. (211 AD2d 262 [1st Dept 1995]), are distinguishable from the present facts. Rachmani (211 AD2d 262) pertained to broker's commissions in a real estate transaction, and, as relevant here, the main issue was the accrual date of the plaintiff's claim (id. at 264-265). Defendant cooperative corporation, in its attempt to have the complaint dismissed as time barred, argued that it had repudiated the contract earlier than the sales agreement's law date, the date of closing (id. at 265-266). This Court accordingly explained that the election of remedies is not the defendant's but, rather, the plaintiff's choice (id. at 266-268, citing Ga Nun v Palmer, 202 NY 483 [1911]). As a claim accrual case pertaining to an undisputed date certain for performance, Rachmani is thus distinguishable from the instant matter. Here, the lease—the term of which could, upon extension, run through the year 2100—provided for an ongoing obligation to not unreasonably withhold approval of, among other things, the HPD cure agreement, and such cure agreement was explicitly contemplated by the lease. Kaplan (94 AD3d 616) similarly involved a real estate transaction with a date certain for performance (id. at 617). In Kaplan, the plaintiffs failed to appear at the closing date, which constituted a default under the agreement; two days later, the plaintiffs advised the seller by letter of their decision to purportedly terminate the purchase agreement (id.). Observing that at the time of the plaintiff's letter the time designated for performance (the closing date) had passed, this Court held that a party already in material breach of a contract may not subsequently repudiate the contract based on the same material breach (id. at 617-619). Because Kaplan involved alleged repudiation after the end date for performance as well as, like Rachmani, a date certain for closing, Kaplan is also distinguishable from the allegations in the instant matter.
Notably, the instant appeal is from Supreme Court's decision and order deciding the landlord's motion to dismiss pursuant to, as relevant here, CPLR 3211 (a) (1) and (7). Accordingly, the landlord's burden was to "utterly refute" (Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v Matthew Bender & Co., Inc., 37 NY3d 169, 175 [2021] [internal quotation marks omitted]) the allegations supporting the claim or otherwise demonstrate that the third amended complaint failed to state the relevant claim (see e.g. Roni LLC v Arfa, 18 NY3d 846, 848 [2011] ["we must give the complaint a liberal construction, accept the allegations as true and provide plaintiffs with the benefit of every favorable inference"]). In the current procedural posture, the majority's interpretation of the June 4, 2021 letter "in its entirety" thus appears to be a finding of fact which is premature. Such interpretation also ignores the categorical nature of the landlord's plain [*5]statement that it "will not, and will never, approve any version of a PCA [cure agreement]."
The tenant, on the other hand, alleges that it relied on the plain meaning of this statement in electing to terminate the lease and assert the present claim, and the tenant further alleges that the landlord's blanket refusal was both a new development and an additional material breach. Moreover, the landlord's unequivocal position in the 2021 letter stands in contrast to, for example, its 2016 position—as observed by Supreme Court in its May 31, 2017 decision and order—that the plans for the cure agreement had to be "redesigned." In other words, this earlier position of the landlord is consonant with the tenant's claim that the June 4, 2021 letter was a separate material breach that escalated, for the first time, to an unequivocal repudiation.
Finally, by concluding that the alleged 2015 and 2021 breaches must have identical dispositions, the majority conflates the allegations. The third amended complaint (TAC) alleges that, notwithstanding two letters requesting approval in December 2015 and February 2016, the landlord failed to respond and presented its objections for the first time in a 2016 court filing. At that time, the tenant alleges, the landlord opposed the tenant's application for an order directing the landlord's approval of the agreement by raising "purported factual issues about whether the Cure Agreement complied with the requirements of the Lease." Accordingly, the relevant inquiry as to the earlier alleged breach was whether the purported factual issues that the landlord raised indeed justified refusing to sign the proposed cure agreement (see generally Second Source Funding, LLC v Yellowstone Capital, LLC, 144 AD3d 445, 445-446 [1st Dept 2016]). Under Supreme Court's decision and order dated May 31, 2017, questions of fact precluded summary judgment on this issue.
As to the alleged 2021 breach, the TAC alleges that the June 4, 2021 letter's statement that the landlord "'will not, and will never, approve any version of' a Cure Agreement" "confirm[ed] a pivot by Landlord"—that is, "Landlord is no longer claiming that technical issues with this particular Cure Agreement . . . warrant Landlord's refusal to sign it." Instead, "Landlord has now made clear that it will never sign any Cure Agreement."
In support of its claim that this latter breach was a repudiation of the lease, the tenant relies on not only the unequivocal language of the letter, but also its allegations of "a years-long campaign intended to frustrate [tenant]'s ability to develop the Property as contemplated by the Lease." These allegations include, inter alia, that "the purpose of the Lease was to allow [the tenant] to develop the Building," and "the Building could not be developed absent a cure." Additionally, the TAC cites Supreme Court's observation in its May 31, 2017 decision and order that "it appears Landlord has not acted in good faith regarding the Cure Agreement[*6]." As to this latter claim for repudiation, the relevant inquiry is whether the June 4, 2021 letter, in the full context of both the contents of the letter and the other allegations, establishes an unequivocal repudiation of the lease (see e.g. Computer Possibilities Unlimited, Inc. v Mobil Oil Corp., 301 AD2d 70, 77 [1st Dept 2002], lv denied 100 NY2d 504 [2003]).
The majority's observations regarding the interrelation between the 2015 and 2021 breaches is therefore a conflation of, on the one hand, arguably conforming performance and, on the other, a total disclaimer. Consequently, a finding that there was no earlier breach would not necessarily preclude the latter claim.
In sum, since the tenant plausibly alleges that the landlord's declaration in the June 4, 2021 letter was a subsequent and separate material breach from the earlier alleged breaches, the tenant, under the election of remedies, was permitted to elect anew and assert the present claim. Accordingly, I would modify Supreme Court's decision and order to reinstate that part of the tenant's cause of action for breach of contract seeking to recover on a theory of repudiation.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 6, 2022