**WOODS PETROLEUM CORPORATION, et al., Appellees,**

v.

**DELHI GAS PIPELINE CORPORATION, Appellant.**

**No. 57398.**

Court of Appeals of Oklahoma, Division No. 4.

April 19, 1983.

Rehearing Denied May 12, 1983.

Certiorari Granted to Review Attorney Fee Award Dec. 26, 1984.

Released for Publication by Order of the Court of Appeals June 3, 1985.

See also, Okl., 700 P.2d 1011.

Robert H. Gilliland, Jr., and Kenneth L. Buettner McAfee & Taft, P.C., Oklahoma City, for appellees.

Thomas T. Rogers and John M. Kyser, Lynch, Chappell, Allday & Alsup, Austin, Tex., for appellant.

STUBBLEFIELD, Judge.

This is an appeal in an action brought by plaintiff, Woods Petroleum Corporation, seeking damages from Delhi Gas Pipeline Company for their alleged taking of plaintiffs' gas without compensation. Plaintiff brought suit under pure negligence, res ipsa loquitor, conversion and breach of contract theories. The jury returned a verdict finding defendant negligent and giving recovery for the amount of gas estimated taken but not paid for ($858,022.40). The trial court awarded prejudgment interest and attorney fees to plaintiffs.

I

Plaintiff Woods Petroleum Corporation, hereinafter referred to as Woods, completed the O.M. Taylor 26–2, hereinafter referred to as Taylor # 2, in Dewey County, Oklahoma, in July of 1976. The Taylor # 2 was drilled to a depth of 9,575 feet and pierced two lenticular aspects of the Morrow formation. Both zones of the Morrow were perforated and production established as a gas well with some condensate production. The top zone of production was from the 9,401 to 9,406 foot depth; the lower zone from 9,434 to 9,448. Bottom pressure of the well was established at 4,500 pounds.

Defendant Delhi Gas Pipeline Corporation, hereinafter referred to as Delhi, had a contractual agreement to purchase the gas produced from the Taylor # 2. By the terms of this agreement Delhi was to provide and operate the metering equipment which measured the volume of gas Delhi took from the Taylor # 2.

The metering device Delhi installed on the Taylor # 2 consisted of a differential pressure flow meter. Such a device works by placing a restriction of a certain known size, known as an orifice plate, in a line of a certain known size, known as the meter run, and measuring the difference in pressure on either side of the orifice plate. Due to the physical fact that for a certain volume of gas to move through such a restriction a certain percentage of the pressure of the gas is translated into velocity, it becomes possible to determine precisely the volume of gas moving through the meter by measuring this pressure drop across the orifice plate. The critical factors in determining the flow are the size of the opening in the orifice plate, the pressure on the system and the temperature of the gas. Delhi's meter on the Taylor # 2 recorded the differential pressure, the system pressure and the gas temperature on a seven day rotating paper chart.

Delhi began taking gas from the Taylor # 2 on October 26, 1976. A notation on the paper chart, accompanied by the initials of Delhi's meterman, on this day reflected that a .75 inch orifice plate had been removed and a 1.25 inch orifice plate installed in the meter run. The Taylor # 2 operated along lines expected for a Morrow formation well in the area. It was noted, however, that the well's production was only about one-half of what had originally been expected.

On May 17, 1978, Woods pumper for the Taylor # 2 checked the well before noon, noting the wellhead pressure, the operation of the condensate separator/heater, the choke opening on the well, the production of condensate and the readings on Delhi's chart. On this date the pumper recorded a differential pressure of 10. The next day when the pumper checked the well he found all conditions identical to those of the day before except for the differential pressure which had jumped from 10 to 44. A note had also been made on the chart that the orifice plate had been pulled and replaced with another 1.25 inch orifice plate. This note was accompanied by the initials of Delhi's meterman. This change in the

differential pressure indicated the gas production from the Taylor #2 had increased from approximately 880 Mcf to approximately 1,600 Mcf of gas per day.

Shortly after this occurrence Woods requested an inspection of Delhi's metering apparatus. At this inspection the apparatus tested out to be true and the orifice plate was pulled and measured to be 1.25 inches. Delhi's explanation to Woods for the sudden jump in production was that something must have happened in the well to cause an actual increase. Woods' theory was that a larger orifice than a 1.25 inch had been in the meter run and that Delhi's meterman had replaced it with the proper size orifice. Since Delhi had been figuring production using the flow factor for a 1.25 inch orifice, the larger orifice, with its attendant lower pressure drop, would have resulted in Woods being paid for much less gas than was actually being produced by the Taylor #2. Woods reached the conclusion that a 1.75 inch orifice had actually been in the line prior to May 17, 1978, on the basis that a differential pressure of 10 multiplied by the coefficient for a 1.75 inch orifice equals a differential pressure of 44 multiplied by the true coefficient for a 1.25 inch orifice.

Delhi persisted in their denial that any size orifice other than a 1.25 inch had ever been in the meter run and continued to maintain that the cause of the production increase was actually in the well itself.

Woods subsequently brought suit on behalf of itself and all other parties holding interests in the Taylor #2 in the District Court of Dewey County on December 19, 1979. Woods initially alleged causes of action in negligence and conversion, and also alleged facts to invoke the doctrine of res ipsa loquitor. Woods asked for damages of $858,022.40 for gas taken by Delhi but unpaid for, and for $1,000,000 in punitive damages. An amendment to Woods petition was later filed alleging a cause of action for breach of contract. Woods arrived at the figure for actual damages by multiplying the amount of money actually paid to Woods by Delhi by the ratio between the flow coefficient for a 1.75 inch orifice plate and a 1.25 inch orifice plate.

Trial was held before a jury starting on July 14, 1981. On July 17, 1981, the jury returned a verdict finding for plaintiffs on the negligence theory and awarding $858,022.40 in actual damages and no punitive damages. Judgment was entered pursuant to the jury's verdict.

Defendant on appeal argues on five grounds: (1) that the verdict is not supported by the evidence; (2) that the trial court erred in submitting alternative theories of recovery to the jury; (3) that it was error to submit the question of punitive damages to the jury; (4) that false testimony necessitated a new trial; and (5) that it was error to award plaintiffs attorney fees.

## II

The first proposition of error presented by Delhi is that the jury's verdict was not supported by the evidence produced at trial and so should now be overturned. In the case of *Walker v. St. Louis-San Francisco Railway Co.*, Okl., 646 P.2d 593 (1982), the court adhered to this rule:

> " 'In a law action the verdict of the jury is conclusive as to all disputed facts and all conflicting statements, and *where there is any competent evidence reasonably tending to support the verdict of the jury,* this court will not disturb the verdict and judgment based thereon.' [emphasis supplied]"

In the present case Woods presented extensive evidence that the only factor that changed on the Taylor #2 on May 17, 1978, was the increase in the differential pressure. Woods also presented extensive expert testimony that, if in fact this well had actually doubled in production, numerous other factors regarding the well would have changed correspondingly. From these facts the experts drew their opinions that the only possible conclusion which would explain all the existing data was that prior to May 17, 1978, a 1.75 inch orifice had been installed in Delhi's meter run and that on this date it had been replaced with a 1.25 inch orifice.

■ Under the evidence presented to them the jury found Delhi to have been negligent and found that this negligence damaged plaintiffs in the amount of $858,022.40. Actionable negligence consists of three elements: (1) the existence of a duty on the part of the defendant owing to the plaintiff; (2) a violation of that duty; and (3) injury proximately resulting from the violation of that duty. *Sloan v. Owen,* Okl., 579 P.2d 812 (1977). The evidence presented to the jury showed that Delhi had a duty to accurately measure the gas purchased by it from the Taylor # 2 under the terms of the gas purchase contract with plaintiffs. Sufficient evidence was also presented from which the jury could have concluded that, as a result of the use of an improper flow orifice, this duty had been breached. The evidence also showed damages to plaintiffs in the amount of $858,022.40 resulting from this breach of duty.

■ Delhi contends that the evidence offered by Woods is not competent to support the jury's verdict because it was not direct in nature and was based upon inference and speculation. Defendant overlooks the fact that reasonable inferences drawn from circumstantial evidence may have the same probative effect as would direct testimony. We conclude that there was considerable evidence supporting the verdict of the jury.

Woods presented extensive evidence of the physical performance of the Taylor # 2 consisting of regularly taken readings and Delhi's meter charts. This evidence showed that a change in flow from the Taylor # 2 occurred on May 17, 1978, without any concomitant changes in the other physical performance characteristics of the well. The expert witnesses testified that the only permissible inference to be made from this evidence was that the orifice size had been changed. Woods further bolstered this evidence with the performance records of the Taylor # 3, where a change in orifice plate size had been made by Delhi at Woods' request. These records showed a result identical to that found in conjunc-

tion with the Taylor # 2 on May 17, 1978, where Delhi denies such an orifice change. Woods' evidence reasonably tends to prove by permissible inference the fact that the size of the orifice was changed on May 17, 1978, and as such is sufficient to support the judgment based on the jury's verdict. *Sisler v. Jackson,* Okl., 460 P.2d 903 (1969).

### III

■ Delhi's second proposition of error alleges that it was error for the trial court to instruct the jury on negligence and conversion theories when plaintiffs' action was based upon the alleged breach of a contractual duty to measure the gas being purchased. It is well settled, however, that a tort may arise in the course of the performance of a contract and that tort may then be the basis for recovery even though it is the contract that creates the relationship between the parties. *Hall Jones Oil Corp. v. Claro,* Okl., 459 P.2d 858 (1969); *Oklahoma Natural Gas Co. v. Pack,* 186 Okl. 330, 97 P.2d 768 (1939). In the present case the contract between the parties created the relationship between them. Accompanying this contract is a common law duty to perform the thing agreed to be done with care, skill, reasonable expediency and faithfulness. The negligent failure to perform these duties constitutes a tort as well as a breach of contract. *Oklahoma Natural Gas Co. v. Pack, supra.* In the present case the thing agreed to be done was to measure the gas taken from the Taylor # 2. By failing to do this with care, skill, reasonable expediency and faithfulness Delhi breached the contract and also committed a tort. Under previous Oklahoma law plaintiffs could have elected to proceed under either theory of recovery. Title 12 O.S.Supp.1980 § 264.1, however, abrogated the necessity for plaintiffs to elect between these alternative theories of recovery.

Delhi cites the case of *Burton v. Juzwik,* Okl., 524 P.2d 16 (1974), for the proposition that where a contractual duty is breached action lies only in contract and not in tort. This case, however, is not on point for the

proposition stated. *Burton* involved the breach of an agreement to convey an interest in mineral rights. In *Burton* the agreement itself was breached and the court distinguished the case from cases involving the performance of a duty inherent in a relationship created by contract.

Under Oklahoma law it is the duty of the trial court to instruct the jury on the decisive issues raised by the pleadings and the evidence. *Pacific Insurance Co. of New York v. Frank*, Okl., 452 P.2d 794 (1969). In the present case plaintiffs were not required to elect the legal theory under which they were to proceed by virtue of 12 O.S.Supp.1980 § 264.1. And the evidence adduced at trial supported the giving of instructions on conversion, negligence, or breach of contract, since, under the evidence, it could be inferred that Delhi had intentionally taken plaintiffs' gas, or had negligently mismeasured it, or had breached the terms of the contract between plaintiffs and Delhi. The trial court properly instructed on these alternative theories of recovery.

As the trial court's instructions, taken as a whole, fairly presented the law applicable to the issues raised by the pleadings and the evidence, the judgment of the trial court will not now be disturbed. *Kimery v. Public Service Co. of Oklahoma*, Okl., 622 P.2d 1066 (1980).

Additionally, Delhi had presented to the trial court proposed instructions on each of the alternative theories of recovery. See *Bagley v. Blue Flame Propane Co., Inc.*, Okl., 418 P.2d 333 (1966).

### IV

Delhi next contends that the trial court erred in instructing the jury on the question of punitive damages and on allowing information concerning Delhi's net worth to be presented to the jury. Delhi first argues that it was error to submit the question of punitive damages to the jury because: (1) the action was based on a contract and (2) there was no evidence to support the submission of the question to the jury.

Delhi's two initial contentions are without merit. Punitive damages may be properly awarded where the breach of a contractual obligation amounts to an independent willful tort. *Jackson v. Glasgow*, Okl.App., 622 P.2d 1088 (1980). And, in following *Oklahoma Natural Gas Co. v. Pack, supra,* the failure to properly measure the gas purchased from the Taylor # 2 well may be seen to constitute such a tort. The evidence presented may be viewed as showing that Delhi's actions in putting the wrong size orifice in the line, in neglecting to check the orifice size, and in suppressing the fact that the wrong orifice plate had been in place, were of such a nature as to give rise to an inference that these actions had been taken recklessly and in wanton disregard of plaintiffs' rights. As such this case would have justified the allowance of punitive damages. *Sunray DX Oil Co. v. Brown*, Okl., 477 P.2d 67 (1970). This question was then properly submitted to the jury. *State ex rel. Pollution Control Coordinating Board v. Kerr-McGee Corp.*, Okl., 619 P.2d 858 (1980).

Delhi's third argument under this proposition, to the effect that it was error to allow evidence of Delhi's net worth to the jury, is likewise without merit. As stated previously the question of punitive damages was properly at issue in the present case. Where punitive damages are at issue evidence of defendant's net worth may properly be considered. *Smith v. United States Gypsum Co.*, Okl., 612 P.2d 251 (1980).

### V

Delhi's fourth proposition of error alleges that it was error for the trial court to refuse to grant a new trial upon Delhi's presentation of an affidavit at the motion for new trial to the effect that one of Woods' witnesses, the contract pumper on the Taylor # 2, had not testified truthfully at trial. The granting of a motion for new trial on the ground of newly discovered evidence rests, to a large extent, in the discretion of the trial court, and the trial

court's decision will not be disturbed unless an abuse of that discretion is shown. *Richardson v. Davis*, Okl., 439 P.2d 949 (1968).

■■■ In order to justify the granting of a new trial on the ground of newly discovered evidence the new evidence must fulfill certain requirements under 12 O.S.1981 § 651 subd. 7. *Gifford v. Lawton*, Okl., 453 P.2d 1010 (1969). Determinative in the present case is the requirement that the evidence must be material to the issue. On this point the trial court, we believe, properly determined that the inferences from Delhi's affidavit that Woods' pumper may have been more familiar with the metering equipment than he had made known in his trial testimony was not material to the issue of the change of, or tampering with, the orifice size in the metering equipment.

The trial court's ruling on the motion for new trial on this basis was not an abuse of discretion and will not now be disturbed on appeal.

## VI

Delhi's final proposition of error is that the trial court erred in awarding plaintiffs attorney fees in this action. Delhi argues that the taking of plaintiffs' gas due to negligence was not an injury to property as contemplated in 12 O.S.Supp.1979 § 940(A). Plaintiffs counter with a "definitional" argument to the effect that deprivation of property may also constitute an injury.

The statute is not ambiguous when it states *"In any civil action* to recover damages for the negligent or willful injury to property.... [emphasis added]" That language was obviously intended to encompass a wide variety of actions, limited only by the phrase "negligent or willful injury to property."

Since the jury determined that defendant's actions were negligent, the question determinative of the appropriateness of attorney fees is whether defendant's acts constituted an injury to property as contemplated by the legislature in enacting § 940.

We, like plaintiffs in their brief, are forced to turn to the definition of "injury" and "injury to property" for guidance since we are unable to find cases construing this statute. We are persuaded by authority cited by plaintiffs. In the case of *Bernstein v. N.V. Nederlandscheamerikaansche Stoomvaartmaatschappij*, 76 F.Supp. 335 (S.D.N.Y.1948), it was stated:

> " 'The term 'an injury to property' does not necessarily mean a physical injury to tangible property, but includes any and every invasion of one's property rights by actionable wrong. General Construction Law, § 25–A; *Ghiglione v. Friedman,* 115 App.Div. 606, 100 N.Y.S. 1024.' "

> "Not being able to conceive of greater injury to property than to lose it, we think plaintiff suffered injury to his property when the same was lost. In *Kavanaugh v. McIntyre et al.,* 210 N.Y. 175, page 180, 104 N.E. 135, page 136, the Court of Appeals approved the definition of 'injuries to property' found in Hilliard on Torts, 3rd Ed., 464, in the following words:

> " 'Injuries to property are in themselves of great variety; being committed with or without force, immediately or consequentially, by misfeasance or nonfeasance, by direct invasion of another's possession, or by an unauthorized use of one's own property, causing damage to another. With reference to the injuries themselves they include disseisin, * * * conversion * * * and negligence.' "

■■■ We believe that the negligence of defendant, as found by the jury, caused a very real detriment and injury to the property and property rights of plaintiffs. As such we do not find the award of attorney fees by the trial court to be error.

The judgment of the trial court entered pursuant to the jury's verdict, the ruling on the motion for new trial and the award of attorney fees to plaintiffs are hereby affirmed in all respects.

BRIGHTMIRE, P.J., and DeMIER, J., concur.