(April 7, 1994)

■ ACACIA NATIONAL LIFE INSURANCE COMPANY, Respondent-Appellant, v KAY JEWELERS, INC., et al., Appellants-Respondents, et al., Defendants. [610 NYS2d 209] —Order, Supreme Court, New York County (Stuart C. Cohen, J.), entered September 30, 1992, which, *inter alia,* denied the defendants' motion to dismiss the first, third, fourth and sixth causes of action, unanimously modified, on the law, to grant the motion to dismiss the first and third causes of action, and otherwise affirmed, without costs.

The plaintiff, on its own behalf and on behalf of other purchasers of certain 12⅞% Senior Subordinated Notes due 1999 which were issued by the defendant Kay Jewelers, Inc., instituted this action alleging breach of contract, fraud, negli-

gent misrepresentation, tortious interference with contract and violations of the Securities Act of 1933 (48 US Stat 74 [1933 Act]). One hundred million dollars worth of notes were sold pursuant to a prospectus dated July 28, 1989, a Form S-3 Registration Statement filed July 27, 1989 and an indenture between Kay and Crestar Bank as trustee, dated August 1, 1989.

The offering provided that the notes were redeemable at the option of Kay Jewelers on or after August 1, 1994. Further, in the event of a "Change of Control", holders of notes could require the company to repurchase all or part of them at 100% of the principal amount, plus accrued and unpaid interest, if any, to the date of purchase. "Change of Control" was defined as:

"(i) any Person or group * * * other than a Person who is an Existing Stockholder or a group in which Existing Stockholders own or control, directly or indirectly, a majority of the voting securities of the Company owned or controlled, directly or indirectly, by such group, acquiring or controlling, directly or indirectly, a majority of the outstanding voting securities of the Company or (ii) the election or designation of a majority of the board of directors of the Company not consisting of current directors and their designees.

" 'Existing Stockholder' means those directors and officers of the Company, as of the date hereof, who are current stockholders of the Company.

"Any offer to purchase the Notes upon a Change in Control will be made in compliance with the provisions of Rule 14e-1 under the Securities Exchange Act of 1934, as amended. Because a Change in Control could be expected to occur in connection with certain forms of takeover attempts, these provisions could deter hostile or friendly acquisitions of the Company where the person attempting the acquisition views itself as unable to finance the purchase of the principal amount of notes which may be tendered to the Company and the amount of Senior Indebtedness that may be required to be repaid upon occurrence of a Change in Control. From time to time the Company has received proposals concerning possible acquisitions of the Company."

According to the prospectus, the terms of the indenture could be modified with the consent of the Company and of the holders of a majority in outstanding principal amount of the notes issued thereunder. However, a reduction of the principal amount of the notes and a change in the holder's right to

receive payments of the principal or interest thereon, could only be modified with the noteholder's consent.

On July 1, 1990, Kay entered into an agreement with Ratners Group plc pursuant to which Kay would be merged into a subsidiary of that company. The merger was conditioned on Ratners acquiring at least a majority in outstanding principal amount of the notes and the indenture being amended to eliminate the Change of Control provision.

A subsidiary of Ratners, KJ Acquisition, Inc., then offered to purchase all outstanding notes at 75% of their principal amount plus interest. The July 10, 1990 offer to purchase indicated that all tendering noteholders had to waive any claims to enforce the Change of Control provision and that upon the tender of 50% of the notes, the indenture would be amended to eliminate such provision. Pursuant to a Supplement to Offer to Purchase dated August 13, 1990, KJ offered to purchase all remaining notes at 90% of their principal amount. KJ acquired more than 75% in principal amount of the notes and amended the indenture to eliminate the obligation to offer to repurchase outstanding notes at 100% of their principal upon a Change of Control.

On August 23, 1990, the plaintiff tendered its notes under protest and then instituted this action to recover the difference between the principal amount of the notes and the 90% paid by KJ. The defendants moved to dismiss the complaint. The Supreme Court denied the defendants' motion as to the first cause of action for breach of contract, the third cause of action for anticipatory breach of contract, the fourth cause of action for violation of section 11 of the Securities Act of 1933 (15 USC § 77k) and the sixth cause of action against the individual defendants for violation of section 15 (15 USC § 77o) of the Securities Act of 1933. The remaining causes of action were dismissed.

We note initially that although the defendants failed to specify the grounds upon which they relied in moving to dismiss the complaint, they do not challenge the Supreme Court's determination to treat the motion as one to dismiss for failure to state a cause of action (CPLR 3211 [a] [7]).

The Supreme Court properly rejected the defendants' contention that the complaint must be dismissed for failure of the plaintiff to comply with the indenture's no-action provision. Section 6.06 of the indenture precludes a "securityholder" from bringing suit unless the trustee is provided with written notice of the alleged default. According to the indenture, a

securityholder is "the person in whose name the security is registered". As the Supreme Court found, whether this definition applies to the plaintiff, which sold its notes prior to bringing suit, cannot be resolved on a motion to dismiss (see, Hellenic Greek Orthodox Church v City of Schenectady, 81 AD2d 959).

Despite the sale of its notes, the plaintiff had standing to sue under the Securities Act of 1933. Section 11 (a) of the 1933 Act provides that "any person acquiring such security * * * may, either at law or in equity * * * sue" (15 USC § 77k [a]). Damages may be measured by the difference between the purchase price and "the price at which such security shall have been disposed of in the market before suit" (15 USC § 77k [e]). Thus, the 1933 Act provides for the institution of a lawsuit after the sale of securities.

The order appealed from must be modified, however, to dismiss the first and third causes of action. Although the plaintiff maintains that its first cause of action states a valid claim for breach of contract since Kay Jewelers refused to repurchase the notes at 100% of par when a Change of Control took place, as of August 23, 1990, when the plaintiff tendered its notes, no Change of Control had yet occurred. Contrary to the plaintiff's contention, the Change of Control did not occur on July 1, 1990 when KJ and Kay Jewelers entered into the merger agreement. That agreement required the fulfillment or waiver of a number of conditions before the merger could close. Moreover, Kay's board had the option of renouncing the agreement before the merger's effective date.

Pursuant to the definitions contained in the prospectus and indenture, the merger, and thus, the Change of Control, did not occur until October 26, 1990. By the time the event which would have triggered the requirement to repurchase actually occurred, there was no longer any obligation to repurchase and no contract to breach.

The third cause of action for anticipatory breach of contract must also be dismissed. Generally, the application of the doctrine is limited to bilateral contracts requiring mutual and interdependent conditions and obligations (Long Is. R. R. Co. v Northville Indus. Corp., 41 NY2d 455, 463). The plaintiff seeks the payment of money only under the contract. Its only obligation thereunder was to collect interest until the notes matured in 1999 and then to collect the principal. "The rule that renunciation of a continuous executory contract by one party before the day of performance gives the other party the right to sue at once for damages, is usually applied only to

contracts of a special character * * *. It is not generally applied to contracts for the payment of money at a future time" *(Kelly v Security Mut. Life Ins. Co.,* 186 NY 16, 19; *and see, Indian Riv. Is. Corp. v Manufacturers Trust Co.,* 253 App Div 549).

The defendants' motion to dismiss the fourth cause of action, alleging a violation of section 11 of the Securities Act of 1933 (15 USC § 77k) was properly denied. Pursuant to section 11 (a), any signer, officer of the issuer or underwriter may be held liable for a registration statement containing "an untrue statement of a material fact or omitt[ing] to state a material fact * * * necessary to make the statements therein not misleading".

The statute is violated when material facts are omitted or presented in such a way as to obscure or distort their signifi-cance *(Pincus & Assocs. v Oppenheimer & Co.,* 936 F2d 759, 761; *Greenapple v Detroit Edison Co.,* 618 F2d 198, 205). The test to be applied in determining whether a prospectus is materially misleading is " 'whether defendants' representa-tions, taken together and in context, would have [misled] a reasonable investor' " about the nature of the investment *(Pincus & Assocs. v Oppenheimer & Co., supra,* at 761, quoting *McMahan & Co. v Wherehouse Entertainment,* 900 F2d 576, 579, *cert denied* 501 US 1249). While disclosure is not a " 'rite of confession' ", a prospectus must openly disclose material objective factual matters in a manner designed to accurately inform rather than mislead prospective buyers *(Pincus & Assocs. v Oppenheimer & Co., supra,* at 762, quoting *Data Probe Acquisition Corp. v Datatab, Inc.,* 722 F2d 1, 5, *cert denied* 465 US 1052; *Greenapple v Detroit Edison Co., supra).*

The defendants maintain that nothing in the prospectus could have misled a reasonable investor as to the ability of the company to eliminate the Change of Control provision in light of the prospectus' modification provision. They further con-tend that even if the Change of Control provision is deemed misleading, no decline in the value of the notes can be attributed to such misrepresentation. According to the defen-dants, prior to the announcement of the merger, the notes were only worth 45 to 50% of par. Moreover, a majority of the noteholders made the conscious, economic decision to amend the Change of Control provision, paving the way for merger and the redemption of the notes at a higher rate.

As the Supreme Court concluded, an issue exists as to whether the statements in the prospectus, including the

Change of Control and modification provisions, taken together and in context, could mislead a reasonable investor about Kay's ability to eliminate the Change of Control provision. Based on this provision, which is prominently displayed in the prospectus, a reasonable investor may have been led to believe that it was a special feature offered to them to protect their investment from dilution by corporate raiders and leveraged buyouts and to provide for the repurchase of the notes at 100% of par value *(see, McMahan & Co. v Wherehouse Entertainment, supra)*.

The modification provision, while providing for changes to the terms of the indenture, specifically precluded modifications to the payment of principal and interest provisions in the absence of security holder consent. Nowhere in the prospectus does it state that the modification provision applies to the Change of Control provision. Further, with regard to the defendants' contention as to the plaintiff's inability to prove that it was damaged by redeeming its notes for less than 100%, there is nothing in the record to support their allegation that the value of the notes prior to the announcement of the merger was 45 to 50% of par. At this juncture, assuming the truth of the plaintiff's allegations *(see, Ackerman v 305 E. 40th Owners Corp.,* 189 AD2d 665, 666), a claim for a violation of section 11 has been stated.

A cause of action was also stated under section 15 of the Securities Act of 1933 (15 USC § 77*o*). That section, as amended, provides: "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12 [15 USC § 77k or 77*l]* of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist."

Liability may be imposed under section 15 of the 1933 Act on individuals who directly or indirectly exert control over a primary violator of the securities laws *(Caruso v Metex Corp.,* 1993 WL 305945 [ED NY, July 1, 1993, Mishler, J.]). To establish a claim, a plaintiff must allege facts that set forth a primary violation of the securities laws and a defendant's control person status *(supra; Lazzaro v Manber,* 701 F Supp

353, 368-370; *Drobbin v Nicolet Instrument Corp.,* 631 F Supp 860, 885-886).

In its complaint, the plaintiff alleged that although the individual defendants signed the Registration Statement and were responsible for the contents therein and for the contents of the prospectus, none of these individuals made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in these documents were true and without omission of any material facts necessary to make those statements not misleading. Accepting the plaintiff's allegations as true, a cause of action has been stated against the individual defendants.

A conflict exists in the Second Circuit as to whether a plaintiff must prove scienter to establish a claim *(compare, Marbury Mgt. v Kohn,* 629 F2d 705, *cert denied sub nom. Wood Walker & Co. v Marbury Mgt.,* 449 US 1011; *Drobbin v Nicolet Instrument Corp., supra; Healey v Chelsea Resources,* 736 F Supp 488; *Lazzaro v Manber, supra* [finding negligence sufficient to impose liability subject to the statutory affirmative defense of good faith], *with Lanza v Drexel & Co.,* 479 F2d 1277; *Travelers Ins. Co. v Lewis,* 756 F Supp 172; *In re Crazy Eddie Sec. Litig.,* 747 F Supp 850 [concluding that a plaintiff must prove the defendant's knowledge of the violation]).

Despite this disagreement, for the purpose of pleading, the plaintiff "need not allege facts that would prove that the control person actually exercised the power to influence or control. Rather [it] only need[s] to allege 'the power or potential [power] to influence and control' * * *. Consequently, 'the determination of who is a controlling person * * * is an intensely factual question' " *(Caruso v Metex Corp., supra,* at *3, quoting *Rochez Bros. v Rhoades,* 527 F2d 880, 890-891, and *Arthur Children's Trust v Keim,* Fed Sec L Rep [CCH] ¶ 97,460, at 96,571, respectively). Accordingly, since it cannot be conclusively established that there is no cause of action under section 15 of the Securities Act of 1933, the defendants' motion to dismiss this sixth cause of action was properly denied *(see, Town of N. Hempstead v Sea Crest Constr. Corp.,* 119 AD2d 744).

We have considered the parties' remaining contentions and find them to be without merit. Concur—Murphy, P. J., Rosenberger, Ross, Rubin and Williams, JJ.