**Fred SAUER, Plaintiff,**

v.

**XEROX CORPORATION, Defendant.**

No. 95–CV–6485L.

United States District Court,
W.D. New York.

Aug. 8, 1996.

Steve Mayka, Lacy, Katzen, Ryen & Mittleman, Rochester, NY, Gordon Locke, Gordon Locke Law Offices, New Rochelle, NY, for plaintiff.

John P. Coffey, Latham & Watkins, New York City, for defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

## INTRODUCTION

The present controversy arises from a dispute regarding the rights and obligations of parties to two equipment lease agreements. Plaintiff Fred Sauer's original complaint was filed on September 5, 1995, in the Central District of California. Jurisdiction is based on diversity of citizenship. On September 18, 1995, defendant Xerox Corporation ("Xerox") successfully transferred the action to this Court.

On November 13, 1995, Sauer filed an amended complaint setting forth thirteen causes of action based on breach of contract, conversion, fraud and anticipatory breach. Sauer now moves for summary judgment on his first cause of action for breach of contract for the nonpayment of rent. Xerox seeks to dismiss this same breach of contract claim as well as Sauer's remaining claims (the second and fourth through thirteenth causes of action), with the exception of his third cause of action for breach of the obligation to pay casualty losses. Xerox also moves to strike Sauer's prayer for punitive damages.

After argument on the original motions, Sauer separately moved for summary judgment on his third cause of action for breach of contract based on Xerox's alleged failure to pay casualty losses. Xerox then filed a cross-motion for summary judgment on this same claim.

For the reasons set forth below, Sauer's motions for summary judgment are denied. Xerox's motion to dismiss is granted in part and denied in part. Xerox's motion to strike Sauer's prayer for punitive damages is denied. Finally, Xerox's cross-motion for summary judgment on Sauer's third cause of action is denied.

## BACKGROUND

### a. The User Lease

In the early 1980's, Xerox researchers developed a manufacturing process for producing photoreceptors needed for its copiers. Xerox purchased equipment for the photoreceptor manufacturing line ("photoreceptor line") and installed it at its Oklahoma City plant. In 1985, as part of that initial installation, Xerox decided to sell and lease back some (Sauer contends all) of the equipment used on the photoreceptor line. Xerox initially entered into a sale-leaseback agreement with a third party, Integrated Equipment Leasing Corporation ("Integrated"), in the fall of 1985.[1] Ultimately, Sauer purchased the equipment from Integrated subject to the terms of the "user lease" between Integrated and Xerox. It is this user lease which gives rise to the claims at issue here.

Sometime in 1989, Xerox purchased an improvement for the photoreceptor line, and this "Upgrade" was sold to Integrated pursuant to another sale-leaseback transaction (the "upgrade lease"). The rent under the user lease was accordingly increased. (Amendment No. 2.) Once again, the upgrade equipment was ultimately sold by Integrated to Sauer subject to the terms of the upgrade lease between Integrated and Xerox.

The user lease contained an initial term of eight years at a specified rent, followed by two two-year renewal terms exercisable at the option of the lessee, Xerox. The user lease also contained a purchase option exercisable by Xerox at the end of the second renewal period. Because the value of the

---

1. Exhibit A to the lease agreement provides a list of the equipment subject to the terms of the lease. Xerox maintains this equipment represents only a portion of the equipment that makes up the photoreceptor line. Sauer contends, however, that the leased equipment constitutes the entire photoreceptor line.

equipment subject to the lease was expected to decrease over time, the user lease contained a provision setting forth an appraisal process for determining the fair market rental value of the equipment should Xerox exercise its options to renew, as well as a fair market value should Xerox wish to purchase the equipment at the end of the lease.

Pursuant to this appraisal provision, each party was authorized to designate an independent appraiser, who would then together "mutually agree" as to the value of the equipment. If they could not agree, the two appraisers were required to pick a third independent appraiser to make the final appraisal. If the two appraisers could not agree on a third appraiser, the third appraiser was to be appointed by the American Arbitration Association. The decision of this third appraiser would be "binding and conclusive on the Lessor and the Lessee ..." (User lease Agreement, Section I(d).)

The initial eight year term of the user lease expired on December 31, 1993.[2] In June of 1993, Xerox exercised its right to renew the user lease and the upgrade lease for a term of two years beginning January 1, 1994 and ending December 31, 1995. This is where the trouble begins.

b. **The Attempts to Establish the Fair Market Rental Value**

The facts surrounding the determination of the fair market rental value for the first renewal period are, with a few notable exceptions, mainly in dispute. It is clear, however, that in April of 1993, Xerox informed Integrated that it would elect to exercise the second renewal period upon the expiration of the first, and that it would likely exercise its option to purchase the equipment at the end of the lease.

Apparently each side, Xerox and Integrated (Sauer was not yet, at least officially, in the picture) designated an appraiser pursuant to the provisions of the user lease. Xerox designated James McGowan as its appraiser and Integrated designated several different appraisers from a single firm who each visited the Oklahoma plant on different occasions. Xerox and Integrated did not agree with each other's appraisals and the initial term of the user lease expired on December 31, 1993, without any agreement as to the fair market rental value for the first renewal period.

c. **The AAA Appraisal**

When it became clear, in the summer of 1994, that the parties' appraisers could not agree, Xerox contends it sought to have the parties appoint a third appraiser, as set forth in the user lease appraisal provision. Xerox contends Integrated initially agreed to participate in the appointment of a third appraiser, but later disavowed this agreement.

In May 1995, Xerox requested the American Arbitration Association ("AAA") to appoint the third appraiser, in keeping with the final step of the appraisal provision. Sauer (who in April 1995 became Integrated's successor in interest) vigorously objected to the AAA's intervention, alleging that any attempt to obtain an appraisal through the AAA was improper. Sauer refused to enter into the AAA appraisal process.

On July 15, 1995, allegedly after considering Sauer's objections, the AAA appointed Charles Land as the third appraiser. On July 20, 1995, he inspected the leased equipment. On that same day, Sauer filed his original complaint in the Central District of California. On July 21, 1995, Sauer sent Xerox a formal notice of default for, among other things, nonpayment of rent during the first renewal period.

On August 14, 1995, Land issued his first appraisal, in which he determined the fair market·value (not the rental value) of the equipment to be $993,125. After being informed that a fair market rental value was required, Land issued a revised appraisal setting the fair market rental value at $550,000, based on the fair market value of $993,125. Xerox apparently pointed out what it believed were some erroneous assumptions by Land (regarding the length of the renewal

---

2. It is undisputed that Xerox fulfilled its payment obligations during the initial eight year term of the user lease.

periods and the residual value of the equipment at the end of the renewal periods) and thus asked him to reconsider the appraisal. Land's third and final report, dated September 8, 1995, set the fair market rental value at $275,000, and the residual value of the equipment at $200,000 (the purchase option price). Both parties dispute the correctness of this final Land appraisal.

On November 28, 1995, Sauer told Xerox he was terminating the lease based on the alleged defaults listed in Sauer's earlier notice of default. On December 28, 1995, Xerox sent Sauer a check for $602,636.72, representing the back rent as set forth in the final Land appraisal, plus interest at the rate set forth in the user lease for late payments. Xerox denied any wrongdoing and reserved its rights to challenge the final Land appraisal. Sauer continued to disavow the arbitration process altogether; however, he cashed Xerox's check "in mitigation of damages."

## THE MOTIONS

### I. Xerox's Motion to Dismiss/Sauer's Motions for Summary Judgment/Xerox's Cross–Motion for Summary Judgment

### A. Sauer's Second Cause of Action—Xerox's Allegedly Fraudulent Concealment/Misrepresentation of Information Regarding Nonseverable Modifications.

▮ In his second cause of action Sauer complains that Xerox wrongfully and fraudulently prevented both Sauer's appraisers and the AAA appraiser, Land, from obtaining information and misrepresented information regarding nonseverable improvements (upgrades) to the photoreceptor line. Specifically, Sauer contends Xerox told the final appraiser, Land, that there were no nonseverable improvements made to the photoreceptor line when, in fact, there were such improvements. He maintains that information regarding these improvements was "in the unique and exclusive possession of Xerox," and that it was necessary to an accurate appraisal of the value of the photoreceptor line. He contends that Xerox's failure to provide the appraisers with this information resulted in an artificially low fair market rental value and fair market value in each of the appraisals rendered.

Xerox contends that the complained of conduct constitutes no more than breach of contract and may not be converted into a fraud claim. In the alternative, Xerox argues that Sauer has failed to plead fraud with particularity, as required by Federal Rules of Civil Procedure, Rule 9(b).

▮ In New York, it is well-settled that a tort obligation is " 'apart from and independent of promises made and therefore apart from the manifested intention of the parties' to a contract." *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (quoting Prosser and Keeton on the Law of Torts § 92, at 655 (5th ed.)). "Thus, [a] defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations." *Id.* Conversely, a tort claim does not lie where a party is attempting simply to enforce its rights under a contract.[3] *Id.*

▮ To state a cause of action for common law fraud under New York Law, a plaintiff must allege that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank,* 57 F.3d 146, 153 (2d Cir.1995); *see Albert Apartment Corp. v. Corbo Co.,* 182 A.D.2d 500, 582 N.Y.S.2d 409 (1st Dep't 1992). An additional element is required to state a claim based on

3. Both parties assume that New York law is controlling here. My analysis also focuses on New York Law. I note, however, that my conclusion regarding the disposition of this claim would remain unchanged under Oklahoma law, as the analysis employed by the Oklahoma courts is virtually identical to that employed by their brethren in New York. *See Burton v. Juzwik,* 524 P.2d 16, 18–20 (Okla.1974) (a mere breach of contract cannot be converted into a tort).

fraudulent concealment—a duty to disclose.[4] *Banque Arabe*, 57 F.3d at 153; *see Young v. Keith*, 112 A.D.2d 625, 626–27, 492 N.Y.S.2d 489 (3rd Dep't 1985). A duty to disclose arises where: "(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge."[5] *Banque Arabe*, 57 F.3d at 155 (citations omitted).

In the instant case, Sauer's second cause of action appears to allege more than mere breach of contract. He does not contend that Xerox simply failed to comply with the appraisal provisions, but that it attempted to deceive the appraisers (in particular, Land) by withholding or misrepresenting information necessary for an accurate appraisal. Thus, Sauer alleges that Xerox breached a duty which, although it arises from the parties' contractual relationship, is separate from its obligations under the contract. *See New York Univ.*, 87 N.Y.2d at 316–17, 639 N.Y.S.2d 283, 662 N.E.2d 763; *North Shore Bottling Co., Inc., v. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 179, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968).

■ Further, the basic facts alleged by Sauer appear to satisfy the pleading requirements for a cause of action sounding in fraud. He contends that Xerox misrepresented or concealed material information necessary to a proper appraisal of the photoreceptor line. He argues that Xerox's actions were intended to, and in fact did, result in harm—artificially low appraisal values. Although Sauer has not, with regard to the fraudulent concealment portion of his claim, expressly pled the existence of a duty to disclose owed by Xerox to Integrated, he does allege that the information in question was "in the unique and exclusive possession and control of Xerox." (Amended Complaint, ¶ 79.) This is sufficient, at least at the pleading stage, to establish Xerox's superior knowl-edge, and accordingly, its duty to disclose. *See Polycast Technology Corp. v. Uniroyal, Inc.*, 792 F.Supp. 244, 269–70 (S.D.N.Y.1992) (upon review of the complaint, the court concluded that if the basic facts alleged were sustained by the evidence, the trier of fact could find the existence of a duty to disclose). Further, the allegation that Xerox possessed superior knowledge is also sufficient to establish, for purposes of the motion to dismiss, that Sauer's reliance was reasonable.

■ Finally, Xerox contends that Sauer's failure to identify the speaker of the alleged misrepresentation (that there were no non-severable improvements) is fatal to his claim under Rule 9(b). However, the cases upon which it relies are inapposite. In *Hershfang v. Citicorp*, 767 F.Supp. 1251, 1256 (S.D.N.Y. 1991) and *In re Time Warner Inc. Securities Litigation*, 9 F.3d 259, 264–66 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994), the respective courts held that statements contained in press releases, most of which were attributable to unknown company sources, were not actionable under federal securities laws.

In the instant case, Sauer is not alleging that he (or Integrated before him) relied on statements contained in some unidentified or unsubstantiated press release, but on the representations made directly by Xerox during the appraisal process. It may well be that, following discovery, Sauer is unable to produce sufficient evidence to support his claims. However, at this stage of the proceedings, it appears that "[a]n ample factual basis ... [has] be[en] supplied to support the charges." *See O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991). Accordingly, Xerox's motion to dismiss Sauer's second cause of action is denied.

## B. Sauer's First Cause of Action— Breach of the Obligation to Pay Rent

■ In light of my decision to deny Xerox's motion to dismiss Sauer's second cause

---

4. Sauer is required to plead these same elements under Oklahoma law. *See Silk v. Phillips Petroleum Co.*, 760 P.2d 174, 176–179 (Okla.1988); *Testerman v. First Family Life Ins. Co.*, 808 P.2d 703, 706 (Okla.Ct.App.1990).

5. The same is true in Oklahoma. *See Faulken-berry v. Kansas City Southern Railway Co.*, 602 P.2d 203, 206 (Okla.1979) (employer's superior knowledge required full disclosure); *von Brauchitsch v. Cravens*, 604 P.2d at 379–81 (Okla Ct.App.1979) (seller required to disclose known defect in home).

of action alleging fraud in connection with the arbitration process, I am compelled to deny Xerox's motion to dismiss Sauer's first cause of action for breach of the obligation to pay rent. I note that absent the fraud issue, it appears that Xerox complied with its obligations under the contracts concerning the appraisal process, while Sauer failed to do so. However, in view of the extant fraud claim, a final determination on this cause of action must be reserved for a later date.

For this same reason—i.e., that numerous factual issues remain to be determined regarding Xerox's allegedly fraudulent conduct during the arbitration process, and that these issues necessarily relate to Sauer's breach of contract claim for the nonpayment of rent—Sauer's motion for summary judgment on this first cause of action is also denied.

## C. Sauer's Third Cause of Action—Failure to Report and Pay Casualty Losses

█ In his third cause of action, Sauer contends that since the installation of the photoreceptor line in 1985, certain components of that line have suffered casualty losses. Under the terms of the lease agreements, Xerox was required to timely report such losses and reimburse Sauer for the lost equipment according to a schedule attached to the user lease agreement. Sauer alleges that Xerox has failed to timely report and pay for these losses as required by the lease agreements.

In moving for summary judgment, Sauer contends that Xerox has conceded that by February 1993, some of the equipment sustained casualty losses totalling in excess of $200,000. He contends that by letter dated July 21, 1995, Xerox received notice of default, identifying three separate defaults by Xerox, including its failure to timely pay casualty losses. Xerox allegedly denied that they were in default for the failure to pay rent, but was silent regarding its alleged failure to timely notify Sauer of Events of Loss or make casualty payments.

Finally, Sauer contends that Xerox received written notice of termination of the lease agreements based on its failure to cure the defaults set forth in the notice of default.

Accordingly, he contends that, as a matter of law, Xerox is in breach of its obligation to report and pay casualty losses, and Sauer is therefore entitled to judgment and the return of his equipment.

Xerox, in opposing Sauer's motion, denies that it has breached its obligation to report and pay casualty values and alleges that it made several offers of payment from February 1993 through the summer of 1995. It argues that these offers were ignored by Integrated, and ultimately Sauer. Xerox contends that Integrated never considered the casualty losses to be an important issue, and instead, focused on the appraisal value dispute. It further contends that Sauer, himself, advised Xerox in March 1995, that its proposed offer on the Casualty Value was "within the range of reason." Xerox contends it heard nothing more on this issue from Sauer until July, 20, 1995, when Sauer filed his original complaint. The next day, Sauer served Xerox with notice of default for Xerox's alleged failure to pay rent and casualty losses.

In cross-moving for summary judgment, Xerox argues that it, and not Sauer, is entitled to judgment on this claim due to Sauer's alleged failure to comply with the contractually bargained-for notice and opportunity to cure provisions. Xerox contends, and Sauer apparently concedes, that the commencement of a lawsuit terminates the defaulting party's right to cure. Xerox contends that Sauer's actions—giving notice of the alleged defaults after the filing of the complaint—were designed to deny Xerox an opportunity to cure any such defects in clear violation of it's contractual rights. Accordingly, it argues that Sauer is in breach and that Xerox is entitled to judgment as a matter of law. In the alternative, Xerox contends that at the very least, Sauer's motion for summary judgment should be denied due to the existence of numerous factual issues.

As a preliminary matter, I note that this litigation is in its infancy. No answer has been filed and no discovery has been conducted. Moreover, as the above-recitation of the parties differing positions indicates, and as their colloquy at oral argument on the

original motions regarding the various "missing" and "destroyed" items demonstrates, there are many material factual issues yet to be determined on this cause of action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986) (trial court should not allow trial by affidavit, and must use caution in deciding whether to grant summary judgment). Accordingly, both parties' motions for summary judgment on this cause of action are denied as premature.

### D. Sauer's Fourth through Seventh Causes of Action—Conversion Claims)

■ Sauer's fourth, fifth, sixth and seventh causes of action each allege Xerox committed the tort of conversion by "trading-in" two pieces of equipment, "scrapping" ten pieces of equipment and willfully destroying "certain of the components of the Photoreceptor Line" owned by Sauer. Xerox denies any wrongdoing and argues that Sauer's claims allege no more than breach of contract and that Xerox's possession of the equipment was not unlawful.

The user lease contains three provisions pertinent to Sauer's conversion claims. The first provision defines, in relevant part, an "Event of Loss" as "loss of the Leased Equipment or of the use thereof due to theft, disappearance, destruction, damage beyond repair or rendition of such Leased Item permanently unfit for commercial operation for any reason whatsoever . . . ."

The second provision, under the heading *"Loss or Destruction; Requisition of Use"* provides that upon the occurrence of an "Event of Loss," the lessee must notify the lessor of the loss in a timely manner (as set forth in the provision) and is required to purchase the equipment on an " 'as is', 'where is' basis" at a "Casualty Value" set according to a schedule attached to the user lease.

The third provision, under the heading "Replacement Parts," provides, in relevant part:

> . . . the Lessee, at its own cost and expense, will promptly replace all Parts or Leased Items . . . which may from time to time become worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair, permanently rendered unfit for use for any reason whatsoever. . . . The Lessee shall notify the Lessor of any Replacement Part having a per item cost of $50,000 or more. In addition, in the ordinary course of maintenance, service, repair, overhaul or testing, the Lessee may, at its own cost and expense, remove any Parts, whether or not worn out, lost, stolen, destroyed, seized, confiscated, damaged beyond repair or permanently rendered unfit for use, *provided* that the Lessee shall, at its own cost and expense, replace such Parts as promptly as practicable.

The user lease also contains a narrowly drawn choice-of-law provision which states, "This Lease has been negotiated and delivered in the State of New York and shall be governed by, and construed in accordance with, the laws of the State of New York." Because this case was transferred from the Central District of California on motion by Xerox, this Court must apply California choice-of-law rules to determine the viability of this provision. *See Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964) (following a transfer initiated by a defendant under § 1404(a), the transferee court must apply the choice-of-law rules of the transferor court); *Computer Associates Int'l, Inc. v. Altai, Inc.*, 22 F.3d 32, 35 n. 3 (2d Cir.1994).

California honors contractual choice-of-law provisions "unless (1) the chosen state has no substantial relationship to the parties or transaction; or (2) such application would be contrary to a California public policy or evade a California statute." *General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1506 (9th Cir.1995) (citing *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992)). Neither of these concerns are presented here. Accordingly, the choice-of-law provision is controlling.

■ Although, as set forth above, the contract provisions must be interpreted in accordance with New York law, the equipment in question is located in Oklahoma, thus

presenting a choice-of-law issue. Both parties rely almost exclusively on New York law. A choice-of-law analysis is unnecessary here, however, because the law of conversion in Oklahoma and New York is the same. In both states, a mere breach of contract may not be converted into a tort. A separate duty arising from the contractual relationship must be violated before an action sounding in tort will lie. *See, e.g., Burton v. Juzwik*, 524 P.2d 16, 18 (Okla.1974) (simple breach of contract does not constitute conversion); *Woods Petroleum Corp. v. Delhi Gas Pipeline Corp.*, 700 P.2d 1023, 1027 (Okla.Ct.App. 1983); *Yeterian v. Heather Mills N.V. Inc.*, 183 A.D.2d 493, 494, 583 N.Y.S.2d 439 (1st Dep't 1992); *see also Kubin v. Miller*, 801 F.Supp. 1101, 1118 (S.D.N.Y.1992) citing *Matzan v. Eastman Kodak Co.*, 134 A.D.2d 863, 521 N.Y.S.2d 917 (4th Dep't 1987) (breach of contract, without more, does not give rise to tort liability); *Albemarle Theatre, Inc. v. Bayberry Realty Corp.*, 27 A.D.2d 172, 174, 277 N.Y.S.2d 505 (1st Dep't 1967).

In *Woods Petroleum Corp.*, 700 P.2d at 1026–28, the plaintiff, an owner of a gas pipeline, brought suit against a pipeline company claiming that the company had converted its gas. The pipeline company had entered into a contract with the plaintiff to purchase the gas produced from the pipeline. The pipeline company was also required, by the terms of the contract, to operate the metering equipment used to measure the volume of gas taken. The plaintiff claimed that the pipeline company willfully changed the size of the opening of the metering device in order to take a higher volume of gas without paying for it. *Id.* The pipeline company argued that the complained-of conduct constituted no more than a breach of its contractual obligations. The Oklahoma Court of Appeal disagreed, finding that the intentional mismeasurement of the gas sounded in tort as well as contract. *Id.* at 1027.

In *Albemarle Theatre, Inc. v. Bayberry Realty Corp.*, 27 A.D.2d at 173–74, 277 N.Y.S.2d 505, the plaintiff, a lessor of a theater, brought suit against the lessee for breach of contract and conversion. The plaintiff claimed the lessee and others conspired to destroy the value of the theater by agreeing to run b-grade, rather than first-run movies, as required by the lease agreement. As in *Woods Petroleum Corp.*, the defendant in *Albemarle* argued that at most, its actions constituted a breach of contract. The *Albemarle* court disagreed, finding that:

> The amended complaint ... contains allegations far beyond a mere assertion of conspiracy by the defendants not to carry out the contract. It is alleged that the defendant contracting parties, in order to improve the operating position of other theatres owned by them and run in competition to plaintiff's Albemarle Theatre, ... not only failed to operate the Albemarle Theatre responsibly pursuant to the contract, but affirmatively, intentionally and wilfully set out in conjunction with other defendants to destroy the value and utility of the Albemarle Theatre henceforth as a theatre. Such allegations state a valid cause of action in tort against the contracting parties.

*Id.* at 174.

In the instant case, however, given the user lease provisions, which broadly define "Event of Loss," and allow Xerox to remove and replace equipment for virtually any reason, it is difficult to see how Sauer's conversion claims amount to anything more than an alleged breach of contract for the failure to give notice of and pay casualty losses or to give notice of and replace destroyed or removed equipment. Each of the complained-of acts—the "trading-in," "scrapping" or "destruction" of equipment—is contemplated by the terms of the user lease, which specifically provide that Sauer is to be compensated if the equipment is destroyed or replaced.[6] Sauer's description of the alleged conversions as willful and malicious adds nothing. He simply fails to plead a separate wrong. *See Burton v. Juzwik*, 524 P.2d at 18–19; *Kubin v. Miller*, 801 F.Supp. at 1118. Accordingly,

---

**6.** The amended complaint already contains a separate breach of contract claim for Xerox's alleged failure to pay casualty losses.

his fourth through seventh causes of action are dismissed, with prejudice.

### E. Sauer's Eighth and Ninth Causes of Action—Xerox's Allegedly Fraudulent Statements Regarding the On Line Scanner

■ In his eighth and ninth causes of action, Sauer alleges that Xerox misrepresented to Integrated that a piece of equipment used in the photoreceptor line, known as the "on line electric scanner," had an itemized value of $545,017, and that it was an integral part of the photoreceptor line. In essence, he alleges fraud in the inducement.

Xerox raises a plethora of defenses, most notably, that both causes of action are time-barred.[7] A review of the amended complaint reveals that the eighth and ninth causes of action, as pled, are barred by the applicable statute of limitations.

Under New York law, an action for fraud must be filed within six years of the commission of the fraud, or two years from when the fraud was, or should reasonably have been discovered, whichever is longer. CPLR §§ 213, 203(g). Here, the alleged misrepresentations were made in connection with the original sale of the equipment back in 1985. However, Sauer's amended complaint does not indicate why these misrepresentations were not discoverable by Integrated prior to 1991, six years after they were allegedly made, nor does he state when they were in fact discovered. He merely states that "Xerox now contends the On Line Electric Scanner had no value." The amended complaint is silent as to when the misrepresentation regarding the integral nature of the scanner was discovered.

Thus, as currently stated, Sauer's eighth and ninth causes of action are barred by the statute of limitations. Accordingly, Xerox's motion to dismiss these causes of action is granted. *See Butler v. Caldwell & Cook, Inc.,* 122 A.D.2d 559, 560 (4th Dep't 1986) (in

class action against builder of homes where many of the plaintiffs' claims might be time-barred, trial court properly dismissed complaint).

### F. Sauer's Tenth and Eleventh Causes of Action—Xerox Entered Into the User and Upgrade Leases Never Intending to Honor Their Provisions

■ In his tenth and eleventh causes of action, Sauer contends that at the time Xerox entered into the user and upgrade leases with Integrated, it never intended to honor its contractual obligations, and that this conduct constitutes fraud. Xerox contends Sauer is once again attempting to dress-up a breach of contract claim in tort clothing. I agree.

Under New York law, "[i]t is well settled that no cause of action to recover damages for fraud arises when the only fraud charged relates to a breach of contract." *Edwil Ind., Inc. v. Stroba Instruments Corp.,* 131 A.D.2d 425, 516 N.Y.S.2d 233 (2d Dep't 1987) (citations omitted); *see New York University v. Continental Ins. Co.,* 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995); *Spellman v. Columbia Manicure Mfg. Co., Inc.,* 111 A.D.2d 320, 324, 489 N.Y.S.2d 304 (2d Dep't 1985) (Appellate Division reversed denial of motion to dismiss where allegations of fraud were substantially similar to those presented here). As the New York Court of Appeals recently held, "[g]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a] claim" for fraud. *New York University v. Continental Ins. Co.,* 87 N.Y.2d at 318, 639 N.Y.S.2d 283, 662 N.E.2d 763.

In the instant case, Sauer has simply failed to allege a violation of a duty independent of those imposed by the contract itself. He argues only that Xerox, at the time it entered into the user and upgrade leases, "did not

---

7. Because I find that Sauer's eighth and ninth causes of action, as pled, are barred by the statute of limitations, I decline to address Xerox's other defenses, many of which involve factual issues inappropriate for resolution on motion to dismiss. I note, however, that Xerox's contentions regarding the lack of specificity in the

pleading of these causes of action are well taken. *See O'Brien v. National Property Analysts Partners,* 936 F.2d at 676 ("while Rule 9(b) permits scienter to be demonstrated by inference, this 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations'") (citation omitted)).

intend to honor certain of [their] provisions." These allegations are virtually identical to those expressly rejected by New York's highest court. *See id.*

In short, Sauer's tenth and eleventh causes of action say "nothing which is not legally embraced by the first [and third] causes of action for breach of contract. Since [they] do[ ] not state [ ] separate cause[s] of action ... [they] must fall." *Spellman v. Columbia Manicure Mfg. Co., Inc.,* 111 A.D.2d at 324, 489 N.Y.S.2d 304 (quoting *L. Fatato, Inc. v. Decrescente Distrib. Co.,* 86 A.D.2d 600, 601, 446 N.Y.S.2d 120 (2d Dep't 1982)). Accordingly, Xerox's motion to dismiss Sauer's tenth and eleventh causes of action is granted, with prejudice.

### G. Sauer's Twelfth and Thirteenth Cause of Action—Anticipatory Breach

Sauer contends that because Xerox has allegedly breached its obligation to pay rent for the first renewal period, it can be inferred that they will fail to do so for the second renewal period, and that they will similarly fail to pay the fair market value for the purchase of the equipment at the expiration of the second renewal period. He maintains that Xerox's actions constitute a repudiation of its obligations under the user and upgrade leases.

Sauer's anticipatory breach claims fail for two reasons. First, Sauer has failed to plead "a definite and final communication of the intention to forego performance," as required under New York law.[8] *Rachmani Corp v. 9 East 96th St. Apartment Corp.,* 211 A.D.2d 262, 267, 629 N.Y.S.2d 382 (1st Dep't 1995). Second, "the application of the doctrine is limited to bilateral contracts requiring mutual and interdependent conditions and obligations, (citation omitted) [and] is not generally applied to contracts for the payment of money at a future time." *Acacia Nat. Life Ins. v. Kay Jewelers, Inc.,* 203 A.D.2d 40, 44, 610 N.Y.S.2d 209 (1st Dep't 1994) (citations omitted).

Far from repudiating its obligations, Xerox has informed Sauer of its intention to exercise both the second renewal and purchase options. In fact, Sauer acknowledges this in his amended complaint. Xerox's actions hardly constitute a "definite and final communication of the intention to forego performance." *See Rachmani Corp. v. 9 East 96th St. Apartment Corp.,* 211 A.D.2d at 267, 629 N.Y.S.2d 382; *Phibro Energy, Inc. v. Empresa De Polimeros De Sines Sarl,* 720 F.Supp. 312, 316 (S.D.N.Y.1989) ("There must be a clear demonstration of an intent not to perform.... Furthermore, such a repudiation must be positive and unequivocal") (citations omitted); *see also Towers Charter & Marine Corp. v. Cadillac Ins. Co.,* 708 F.Supp. 612, 614 (S.D.N.Y.1989) (court held, "as a matter of law that [the defendant's] actions ... were consistent with its rights under the agreements and thus did not constitute an anticipatory breach").

More importantly, the doctrine of anticipatory breach is " 'limited ordinarily to bilateral contracts' embodying some mutual and interdependent conditions and obligations." *Sodus Mfg. Corp. v. Reed,* 94 A.D.2d 932, 463 N.Y.S.2d 952 (4th Dep't 1983) (quoting *Long Is. R.R. Co. v. Northville Inds. Corp.,* 41 N.Y.2d 455, 463, 393 N.Y.S.2d 925, 362 N.E.2d 558 (1977)).

> The doctrine ... evolved as a defense in order to excuse an injured party from performance of its own obligations under a contract once it has been repudiated by the other party and 'the theoretical basis for not applying it to ... bilateral contracts that have been fully performed by the injured party is that the application is unnecessary to such contracts (citation omitted).'

*Id.* at 933, 463 N.Y.S.2d 952.

Here, Sauer has fully performed his obligations under the lease agreements; he has "delivered" the equipment to Xerox. There is no performance by Sauer to be excused. He seeks the payment of money only. *See Acacia Nat. Life Ins. v. Kay Jewelers, Inc.,* 203 A.D.2d at 44, 610 N.Y.S.2d 209 (doctrine is "not generally applied to contracts for the

---

**8.** The parties do not dispute that Sauer's anticipatory breach claims are properly governed by

New York law.

payment of money at a future time"). Accordingly, the doctrine of anticipatory breach is inapplicable and Xerox's motion to dismiss Sauer's twelfth and thirteenth causes of action is granted, with prejudice.

## II. Xerox's Motion to Strike Sauer's Prayer For Punitive Damages

In light of the above dispositions, Xerox's motion to strike Sauer's prayer for punitive damages is denied without prejudice to renewal at the time of trial, pending determination of the claims to be submitted to the jury.

### CONCLUSION

For the reasons set forth above, plaintiff Sauer's motions for summary judgment on his first and third causes of action are denied. Defendant Xerox's motion to dismiss is denied as to Sauer's first and second causes of action, and granted as to Sauer's fourth through thirteenth causes of action. Xerox's motion to strike Sauer's prayer for punitive damages is denied. Finally, Xerox's cross-motion for summary judgment on Sauer's third cause of action is denied.

IT IS SO ORDERED.