Glenmede Trust Co., N.A. v Infinity Q Capital Mgt. LLC

2026 NY Slip Op 02330

April 16, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The Glenmede Trust Company, N.A., et al., Plaintiffs-Appellants,

v

Infinity Q Capital Management LLC, et al., Defendants-Respondents, James Velissaris, et al., Defendants.

Decided and Entered: April 16, 2026

Index No. 160830/22, 160834/22, 160964/22|Appeal No. 5111-5112|Case No. 2024-02820, 2024-01354|

Before: Moulton, J.P., Gesmer, Rodriguez, Higgitt, Michael, JJ.

Rolnick Kramer Sadighi LLP, New York (Michael J Hampson, of counsel), for The Glenmede Trust Company, N.A., Flint Hills Diversified Strategies, LP, and Carson Family 2013 Dynasty Trust, appellants.

Milbank LLP, New York (Sean M. Murphy, of counsel), for Leonard Potter, Bonderman Family Limited Partnership, LP, and Infinity Q Capital Management LLC, respondents.

[*1]

Order, Supreme Court, New York County (Melissa A. Crane, J.), entered on or about February 26, 2024, which, to the extent appealed from as limited by the briefs, granted the motion by defendant Infinity Q Capital Management LLC (IQCM) to dismiss the claims against it under sections 11 and 15 of the Securities Act of 1933, unanimously modified, on the law, to deny the motion as to the claim under section 11, and otherwise affirmed, without costs. Order, same court and Justice, entered on or about March 21, 2024, which granted the motion of defendants Leonard Potter and Bonderman Family Limited Partnership, LP (Bonderman LP) to dismiss the complaints against them, unanimously modified, on the law, to deny the motion as to the Securities Act of 1933 section 11 claim and as to the section 15 claim to the extent it alleges that Potter and Bonderman LP were control persons of IQCM, and otherwise affirmed, without costs.

As alleged in the relevant complaints,FN1 in 2014 the late David Bonderman, a billionaire investor and founder of the investment fund TPG, launched defendant IQCM to manage two investment funds: a hedge fund, not at issue in this case, and a mutual fund open to the public named Infinity Q Diversified Alpha Fund (the Mutual Fund). The Mutual Fund was designed to make available to retail investors esoteric investment products and strategies that Bonderman had successfully used and that were typically available only to very wealthy investors. These investments included derivatives and swaps, many tied to market volatility.

To administer the Mutual Fund, Bonderman turned to U.S. Bank. U.S. Bank offered a service known as "multiple series trusts," or "MSTs." The MSTs were a series of unrelated mutual funds that were all owned and legally controlled by a single trust. Bonderman chose the Trust for Advised Portfolios (the Trust), a Delaware statutory trust created by U.S. Bank, as the legal vehicle for the Mutual Fund.

The Mutual Fund was managed by IQCM pursuant to a written agreement with the Trust. Defendant Bonderman LP owned 25% or more of IQCM. Bonderman caused Potter to become the CEO of IQCM and defendant James Velissaris to become its chief investment officer, or CIO. Bonderman had a prior relationship with both men: Potter and Velissaris were employees of Wild Cat Partners, the investment advisor to Bonderman LP.

The swaps that were the main assets held by the Mutual Fund did not have an established market price. To provide a means for valuing the swaps, IQCM used a valuation service purchased from Bloomberg called BVAL. IQCM provided U.S. Bank's affiliate with the valuations it generated using BVAL, including the net asset value (NAV) of the Mutual Fund.

[*2]

The complaints allege that Velissaris manipulated BVAL to massively inflate the value of the assets and therefore the reported NAV. These improper valuations were eventually uncovered by the SEC. As a result, the Mutual Fund collapsed in February 2021, with assets about $500 million less than reported.

The SEC commenced a series of civil actions and referred the matter to prosecutors. Bonderman LP and IQCM were permanently barred from the securities industry, and Bonderman LP was subject to a disgorgement order. Velissaris was criminally prosecuted. He ultimately pled guilty and was sentenced to 15 years in prison and ordered to make restitution of $22 million.

This action concerns allegedly false statements in the Registration Statement SEC Form N-1A for the Mutual Fund, which was effective December 31, 2019, with its accompanying prospectus and other documents (the Registration Statement). The Registration Statement is signed by the trustees of the Trust, as well as by the Trust's chief financial officer. Potter also signed the Registration Statement. However, the following disclaimer appears above Potter's signature: "This Registration Statement, with respect only to information that specifically relates to Infinity Q Commodity Fund, Ltd., has been signed below by the following persons in the capacities and on the dates indicated." Potter is identified as a "Director." The disclaimer thus attempts to limit Potter's certification to statements concerning the Infinity Q Commodity Fund, Ltd., which was a subsidiary of the Mutual Fund. The effect, if any, of this disclaimer is hotly disputed by the parties.

Plaintiffs here were all investors in the Mutual Fund. The gravamen of the complaints is that the Registration Statement falsely states that the NAV for the Mutual Fund was estimated in good faith using a third-party tool (BVAL) that the Mutual Fund does not control. In fact, as noted above, Velissaris used false inputs to manipulate the BVAL, and thus knowingly falsified the NAV. The other defendants are alleged to be liable on various theories.

As relevant to this appeal, plaintiffs asserted claims under section 11 of the Securities Act of 1933 (15 USC § 77k) against Potter and IQCM, and under section 15 of the Securities Act (15 USC § 77o) against Potter, Bonderman LP, and IQCM.

[*3]

Defendants moved to dismiss, arguing that Potter was not liable under section 11 because of the disclaimer over his signature. Because he was not liable, defendants reasoned, IQCM could not be vicariously liable. In any event, defendants asserted that Potter was not acting as the agent of IQCM when he signed the Registration Statement as a director of the Infinity Commodity Fund. With respect to section 15, defendants argued that Bonderman LP had only a 25% ownership of IQCM and that Potter did not have any ownership. As such, they were not control persons of IQCM. Finally, defendants argued that Potter could not be a control person of the Mutual Fund under section 15 because it was not a separate entity, but part of the Trust. The Trust, they argued, was controlled by its Trustees.

Supreme Court granted defendants' motions to dismiss. The court agreed with defendants that the disclaimer over Potter's signature foreclosed his liability under section 11. Therefore IQCM could not be vicariously liable for this signing of the Registration Statement. The court further held that because there was no predicate section 11 claim, there could be no control person liability under section 15 for Bonderman LP, IQCM or Potter. The court held that neither Potter nor IQCM could be a control person of the Mutual Fund because plaintiffs had not asserted any claims against it. Finally, it held that neither Potter nor IQCM could be a control person of the Trust because it was controlled by its trustees.

We now modify Supreme Court's decision.

Potter's direct liability under section 11 rests on the fact that he signed the Registration Statement. There is no mechanism under the 1933 Act for a signatory to limit their responsibility for statements in a registration statement via a disclaimer. Thus, Potter is strictly liable for any misstatement in the operative Registration Statement.

The 1933 Act requires that certain classes of securities offered to the public be registered with the SEC (15 USC § 77e). The process requires an issuer to file a formal "registration statement" with the SEC that contains certain information (15 USC §§ 77f, 77g). The registration statement must be signed by "each issuer, its principal executive officer or officers, its principal financial officer, its comptroller or principal accounting officer, and the majority of its board of directors or persons performing similar functions . . ." (15 USC § 77f [a]).

In the event that "any part of the registration statement . . . contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading," a purchaser of the securities offered pursuant to the registration statement has a cause of action against five enumerated categories of defendant:

(1) every person who signed the registration statement;

[*4]

(2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

(3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;

(4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him;

(5) every underwriter with respect to such security.

(15 USC § 77k).

The only category of persons under which Potter falls is signatory under subsection 1. Section 11 imposes strict liability on "every person who signed the registration statement." We must give effect to the plain meaning of the statute (see Matter of Walsh v New York State Comptroller, 34 NY3d 520, 524 [2019] ["a court 'should construe unambiguous language to give effect to its plain meaning'"], quoting Matter of Lemma v Nassau County Police Officer Indem. Bd., 31 NY3d 523, 528 [2018]). Subsection 4 above, which applies to experts' certifications of discrete portions of a registration statement, illustrates that Congress knew how to allow for a limited scope certification where it chose to do so.

Defendants note that the signature page that precedes Potter's in the Registration Statement states that the signatories on that page are signing "pursuant to the requirements of the Securities Act," presumably a reference to section 6 of the Securities Act (15 USC § 77f [a]). There is no similar statement prior to Potter's signature. However, liability depends on whether a person signed the Registration Statement, not on whether they were required to do so under another section of the Act. And Potter's attempted disclaimer does not change this analysis.

[*5]

Perhaps because section 11's language is clear, there is not a great deal of apposite authority on this point. However, the most persuasive federal authority supports plaintiffs' argument. In Obasi Inv., Ltd. v Tibet Pharms., Inc. (931 F3d 179 [3d Cir 2019]), the court considered the liability of the defendants whom the plaintiffs claimed were "named as a director" of the issuer under section 77k(a)(3). In analyzing the text, the court noted that unlike section 77k(a)(4) — the expert provision — section 77k(a)(3) did not contain the language limiting liability to just the statements or reports prepared by the director. "That's because liability under § 77k(a)(3) is not limited to particular statements within the registration statement," and that is the reason the language appears in 77k(a)(4) and not in 77k(a)(3) (id. at 187). The same reasoning applies here: a signatory has no power via an exordium to unilaterally limit his or her liability under the Act.

Wang v Cloopen Group Holding Ltd. (661 F Supp 3d 208, 238 [SD NY 2023]) also provides closely analogous authority. In Wang, the defendants argued that one of them, DeVries, had signed the registration statement not in her personal capacity, but as an employee of the issuer. She argued that this limitation prevented her from being personally liable under section 11. The court disagreed, holding that "[t]he Cogency Defendants do not cite any authority for the proposition that a signatory to a registration statement is exempt from Securities Act liability because the signatory purported to sign the document on an employer's behalf. Thus, the claims against DeVries under Sections 11 and 15 may proceed" (id. at 238).

The complaints also adequately allege that Potter was IQCM's agent, giving rise to a respondeat superior claim under section 11 against IQCM. Agency is a fact-intensive issue and the complaints' allegations, including that IQCM was the investment advisor to the Mutual Fund and that Potter was the CEO of IQCM, give rise to at least the inference of agency (see Riviello v Waldron, 47 NY2d 297, 302-303 [1979]).

In addition to primary violator liability under section 11, a person who "controls" the primary violator is also liable under section 15 of the Securities Act. Section 15 imposes "control person liability" upon "[e]very person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12 [15 USC §§ 77k or 77l], shall also be liable jointly and severally with and to the same extent as such controlled person . . ." (15 USC § 77o).

[*6]

To establish this liability, "a plaintiff must allege: (1) a primary violation; and (2) control over the primary violator" (In re Flag Telecom Holdings, Ltd. Sec. Litig., 352 F Supp 2d 429, 457 [SD NY 2005]). Control for section 15 purposes "is not the mere ability to persuade, but almost 'always means the practical ability to direct the actions of people who issue or sell securities'" (id. at 458). This Court has established a relatively lenient standard for asserting control at the pleading stage. A plaintiff "need not allege facts that would prove that the control person actually exercised the power to influence or control. Rather [it] only needs to allege 'the power or potential [power] to influence and control' . . . . Consequently, 'the determination of who is a controlling person . . . is an intensely factual question'" (Acacia Natl. Life Ins. Co. v Kay Jewelers, 203 AD2d 40, 46 [1st Dept 1994], quoting Caruso v Metex Corp., 1993 WL 305945, *3 [ED NY, July 1, 1993, No. CV 89-0571]).

Plaintiffs have met this standard with respect to certain of their section 15 claims. The complaints allege that Bonderman LP had a substantial ownership stake in the Mutual Fund and IQCM. Additionally, its founder had a role in creating those entities (see In re Complete Mgt. Inc. Sec. Litig., 153 F Supp 2d 314, 332 [SD NY 2001]), and he appointed long-time trusted and loyal employees to run them (see In re Spiegel, Inc. Sec. Litig., 382 F Supp 2d 989, 1022 [ND Ill 2004]). Therefore plaintiffs sufficiently alleged that Bonderman LP was a control person of IQCM. Plaintiffs also sufficiently alleged that Potter was a control person of IQCM as he was both its CEO and the person who signed the registration statement (cf. In re Smith Barney Transfer Agent Litig., 884 F Supp 2d 152, 167 [SD NY 2012]).

However, plaintiffs fail to sufficiently allege that Potter was a control person of the Mutual Fund or the Trust. The Mutual Fund is not a separate legal entity, but part of the Trust, which is controlled by its trustees. For these same reasons, plaintiffs failed to sufficiently allege that IQCM was a control person of either the Mutual Fund or the Trust.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: April 16, 2026

Footnotes

Footnote 1: Plaintiffs in this appeal are comprised of three groups that opted out of two class actions brought in New York County against some or all of the defendants named herein. Each group subsequently brought its own action alleging nearly identical facts and causes of action. The three groups stipulated to be bound by Supreme Court's decision in one of the actions, and their appeals from that decision have been consolidated by order of this Court. Because this is an appeal from a dismissal pursuant to CPLR 3211 (defendants did not specify the subsection under which they moved), the facts herein are taken from the allegations of the amended complaints and the face of the documents incorporated by reference therein (seeEdwards v Nicolai, 153 AD3d 440, 440-441 [1st Dept 2017]).